

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SSS:ADG/PP                                                          *271 Cadman Plaza East*
F. #2019R00212                                         *Brooklyn, New York 11201*

September 5, 2019

By Hand and ECF

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Frank Segui
                      Criminal Docket No. 19-188 (KAM)

Dear Judge Matsumoto:

        The government respectfully submits these motions in limine in advance of the November 12, 2019, trial in the above-referenced case.[1] The defendant is charged with the transmission of threats to cause death and bodily injury, in violation of Title 18, United States Code, Section 875(c). As set forth in detail below, the government intends to introduce evidence that the threatening communication identified in the indictment was a true threat, intended to be a threat and understood to be a threat. This evidence will likely include prior communications by the defendant and draft communications, search history from the defendant's computer, and the events stemming from the defendant's arrest en route to carry out the threat. In addition, the government seeks to preclude the defendant from presenting evidence or making arguments about the defendant's nonexistent First Amendment right to email threatening communications.

I.    Factual Background

        Between approximately the fall of 2013 and the summer of 2016, the defendant was a graduate student at a university located in the Western District of Michigan (the "University"). At the University, the defendant was a teaching assistant for a professor (referred to in the indictment and herein as "John Doe"). The defendant struggled with his

---

[1] The government reserves its right to supplement this filing with additional motions in limine as it prepares for trial, reviews evidence and interviews potential witnesses. Additionally, the government will meet and confer with defense counsel to resolve any issues as they arise prior to engaging in motion practice.

graduate work and blamed Doe for his difficulties.  In October 2015, the defendant emailed Doe, copying numerous others at the University, listing his grievances with Doe and claiming that Doe had broken promises to him.  (See Ex. 1).[2]  In 2016, the defendant graduated from the University.  In approximately June 2018, the defendant moved from Michigan to Brooklyn, New York, to live with his parents in their apartment (the "Parents' Apartment").

On October 30, 2018, the defendant emailed Doe again by replying to the 2015 email, again copying other individuals at the University (the "October 2018 Email").  (Ex. 1).  The defendant had drafted the content of the email in Microsoft Word prior to sending it.[3]  In the October 2018 Email, the defendant stated, among other things, that:

> It's now been 3 years and you people will still not leave me alone.  [Doe] or one of you mother fuckers is telling every person I contact not to hire me. . . . I get it.  This is a thing you universities do. . . . First you push them away them [sic] you do whatever you can to make them come back to you even if it means ruining their life even if they beg you leave them alone . . . . You don't deserve life.  The world would be better without you.  [Doe] I'm so glad that son of yours is a mute deformed autistic little shit.  That's probably god's way of putting you in place. . . . What's fucked up is I know you guys covered your tracks anything short of tying you down and cutting off your fingers there [sic] no way you will ever admit to any wrong doing.  You'll just claim I'm crazy and continue ruining my life till the day I die. . . .

Doe found the October 2018 Email concerning and threatening, especially the statement about his son.

On or about November 2, 2018, the defendant drafted in Microsoft Word a list of grievances, which focused on Doe, in what appears to be a letter to a third party.  Less than a month later, beginning on approximately November 23, 2018, and continuing to about February 21, 2019, the defendant searched on Google for, among other things:  (1) ways to travel to the city in Michigan where Doe lived; (2) contact information for Doe; (3) the cost of a knife and a switch blade; (4) articles about Rikers Island; (5) how to make and buy different types of poisons; (6) whether it is possible to kill someone with a butter knife;

---

[2] Personal identifying information was redacted on the copy of Exhibit 1 that was filed on ECF.  An unredacted version was provided in hard copy to the Court.

[3] The Microsoft Word documents and Google search history referenced herein were found on the defendant's computer pursuant to a search warrant issued by the Honorable Ramon E. Reyes, Jr., Magistrate Judge for the Eastern District of New York, on March 12, 2019.  (19-M-216).

(7) when it is legal to kill a person and justifiable homicide; and (8) articles about college students killing their professors.

On approximately February 3, 2019, the defendant saved information about Doe, which he found on the Internet, such as Doe's class schedule and contact information, to a Microsoft Word document. (See Ex. 2).[4] On February 22, 2019, the defendant went to the Port Authority Bus Terminal in Manhattan and had a Greyhound bus ticket from New York to Michigan. At that time, the defendant was arrested by Port Authority police for harassment, trespassing and resisting arrest.

Following his arrest, the defendant was given Miranda warnings and chose to speak with law enforcement authorities. The defendant stated in sum and substance and in part that (1) he intended to travel to Michigan to murder Doe; (2) he had purchased an axe or a hatchet to commit the murder; (3) his parents threw him out of the Parents' Apartment and the axe was in his former bedroom; (4) he intended to purchase a new axe when he arrived in Michigan; (5) he followed Doe's publicly available class schedule to know when to kill him; and (6) the October 2018 Email was a "slight underhand threat."

On that same date, Port Authority police received consent from the defendant's father to search the defendant's former room in the Parents' Apartment. The police recovered the abandoned axe, as well as its packaging, which was addressed to the defendant. On February 24, 2019, special agents of the Federal Bureau of Investigation also searched the defendant's former bedroom with the defendant's father's consent.

On April 23, 2019, a grand jury returned an indictment of the defendant, charging him with transmission of a threat to injure, in violation of Title 18, United States Code, Section 875(c).

II. Argument

    A. The Proposed Evidence Constitutes Direct Evidence of the Charged Crime, Relevant Evidence and 404(b) Evidence

The government moves in limine to introduce the below-listed categories of evidence. For the reasons stated below, these categories are direct evidence of the charged crime in the indictment. In the alternative, this evidence is admissible pursuant to Federal Rule of Evidence 404(b).

---

[4] Personal identifying information was redacted on the copy of Exhibit 2 that was filed on ECF. An unredacted version was provided in hard copy to the Court.

3

1. <u>Evidence the Government Seeks to Admit</u>

    a. <u>Prior and Draft Communications to or about John Doe</u> – Exhibit 1 is the threatening email charged in the indictment that the defendant sent to Doe and other individuals, as well as the previously-referenced 2015 email. As discussed above, the defendant drafted the October 2018 email in Microsoft Word prior to sending it.

    b. <u>The Defendant's Google Search History</u> – The defendant searched in Google for, among other things: (1) ways to travel to the city in Michigan where Doe lived; (2) contact information for Doe; (3) the cost of a knife and a switch blade; (4) articles about Rikers Island; (5) how to make and buy different types of poisons; (6) whether it is possible to kill someone with a butter knife; and (7) when it is legal to kill a person and justifiable homicide. Exhibit 2 is a Word document saving the results of some of these searches.

    c. <u>The February 22, 2019, Arrest and Evidence Stemming from the Arrest</u> – The defendant was arrested at Port Authority on February 22, 2019, en route to carry out his threat to kill Doe. The defendant made <u>Mirandized</u> post-arrest statements about the threat and the circumstances surrounding the threat. The defendant had purchased an axe, as well as a bus ticket to Michigan.

2. <u>The Proposed Evidence Is Direct Evidence of the Charged Crime</u>

The proposed categories of evidence are direct evidence of the charged crime of transmitting interstate threats. To carry its burden, the government must prove beyond a reasonable doubt three elements: (1) the defendant threatened the life or bodily injury to John Doe; (2) the threat was transmitted in interstate commerce; and (3) the defendant transmitted the threat knowingly and intentionally. <u>See</u> L. Sand, et. al., <u>Modern Federal Jury Instructions</u> (2016 ed.) ("Sand"), Instruction 31-7. The proposed evidence goes directly to establishing the first and third elements.

In proving the first element, the government must establish that the words communicated by the defendant constituted a "serious statement" that expressed an intention to inflict bodily injury, as opposed to careless talk or exaggeration. <u>See</u> Sand, Instruction 31-8. In making this determination, the government must show both that a reasonable recipient of the communication would have considered it to be a threat and that the person who made the statement intended it to be a threat. <u>Elonis v. United States</u>, 135 S. Ct. 2001, 2011 (2015).

The first component regarding a reasonable recipient is an objective test. <u>Cf. United States v. Malik</u>, 16 F.3d 45, 49 (2d Cir. 1994) (interpreting 18 U.S.C. § 876—a companion statute to § 875(c) that proscribes threats mailed via the U.S. Postal Service—and

4

finding that, "[t]he test is an objective one—namely whether an ordinary, reasonable recipient who is familiar with the context of the [threat] would interpret it as a threat of injury"); see also Sand, Instruction 31-8 ("[T]he statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to inflict bodily injury."). Although an objective test, the reaction of the individual who read the communication is relevant to the inquiry. Sand, Instruction 31-8. Additionally, the "defendant must have made the statement intending it to be a threat, or with knowledge that the statement would be viewed as a threat." Id.; see also Elonis, 135 S. Ct. at 2011.

The third element, or knowledge requirement, is similar to the first element. It requires that the government show that the defendant's threat was not due to accident, mistake or negligence. "To establish this element, the government most prove that the defendant intended the communication to be received by the victim as a threat." Sand, Instruction 31-10.

The government's proposed evidence is relevant to proving the crime charged. The evidence shows that the October 2018 Email was a serious statement, rather than exaggeration or careless talk, and that a reasonable recipient would have considered the communication a threat under the surrounding circumstances. It likewise shows that the defendant meant the communication to be threatening, rather than hyperbole, or at least that the defendant understood that the communication would be received as threatening under the circumstances. For instance, the defendant's prior communication to Doe and draft communications near in time to the October 2018 Email demonstrate both Doe's concern upon reading the October 2018 Email and the defendant's mental state when sending the email. The defendant's Google search history, post-arrest statements about carrying out his threats, and evidence of the axe and bus ticket are likewise direct evidence of the communication's seriousness and how the communication was meant to be received. In the absence of this direct evidence, the government may not be able to prove that the threat was more than an idle communication and that the defendant meant the communication to be a threat.

Evidence of criminal activity not charged in the indictment is admissible when it constitutes either intrinsic or direct proof of the charged crime. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000). Evidence that does not directly establish elements of the offense is nonetheless admissible if it provides necessary background for the events involved in the case. United States v. Skowronski, 968 F.2d 242, 246 (2d Cir. 1992); see also United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (holding that uncharged criminal activity, wrongs, or other acts are not considered "other crimes" evidence that must satisfy Rule 404(b)'s requirements "if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial"). In particular, "evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense." United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994).

5

The Second Circuit has explained that, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Accordingly, "[r]elevant evidence is not confined to that which directly establishes an element of the crime." Id. Indeed, the Supreme Court instructed trial courts to determine the admissibility of evidence "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

In addition to being direct evidence of the charged crime, the proposed evidence is both "inextricably intertwined with the evidence regarding the charged offense," as well as necessary to "complete the story of the crime [on] trial" and provide necessary background and context. Towne, 870 F.2d at 886. See also Gonzalez, 110 F.3d at 942 (holding that evidence of attempted burglary occurring around the same time as the charge felon-in-possession crime was admissible "as crucial background evidence that gave coherence to the basic sequence" of the charged crime); Weinstein's Fed. Evid. 404.20[2][c] (explaining that evidence of other acts "is admitted if it contributes to an understanding of the event in question, even if it reveals crimes other than those charged, because exclusion under those circumstances would render the testimony incomplete and confusing"). It is important for the government to show that the defendant's October 2018 Email was not a one-time, flash of passion that should be brushed aside as hyperbole. Rather, as the government's proposed evidence demonstrates, the October 2018 Email is part of a larger narrative that began with the defendant's perceived grievances and culminated with the defendant's actions to execute his threats. The October 2018 Email, standing on its own, does not convey that narrative, and thus, the evidence should be admitted.

### 3. The Proposed Evidence Is Also Admissible to Prove Intent, Knowledge, Absence of Mistake and Motive

Even if the Court were to determine that the government's proposed evidence is not direct evidence and instead constitutes "other acts" under Rule 404(b), it is still admissible to prove the defendant's intent, knowledge, absence of mistake and motive. See Fed. R. Evid. 404(b)(2). The Second Circuit has long interpreted Rule 404(b) as an inclusive rule allowing the admission of relevant "other acts" evidence if that evidence is offered to prove something other than criminal propensity. See United States v. Moran-Toala, 726 F.3d 334, 345 (2d Cir. 2013); United States v. Carlton, 534 F.3d 97, 101 (2d Cir. 2008) (stating that "our Court follows the inclusionary approach to other crimes, wrongs or acts evidence") (internal quotation marks omitted)); United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996) ("This court follows the inclusionary approach to other crimes, wrong, or acts evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402.") (internal quotation marks and citations omitted)).

Here, the government anticipates that the defendant will argue that the October 2018 Email was not a serious threat or that the defendant did not intend his communication to be a threat. The proposed evidence demonstrates that the October 2018 Email was not a mistake or a momentary lapse of judgment; rather, the purpose of the communication was to instill fear in Doe. The evidence, such as the post-arrest statements, would likewise show the defendant's awareness of the threatening nature of the communication. Additionally, some of the evidence, like the post-arrest statements and other communications, establish the defendant's motive for threatening Doe. Thus, this evidence is admissible under Rule 404(b).

>B. The Defendant Should Be Precluded from Presenting Evidence or Making Arguments About the Defendant's Nonexistent First Amendment Right to Email Threatening Communications

The defendant should be precluded from presenting evidence, making arguments or eliciting testimony referencing the defendant's First Amendment right to have sent the October 2018 Email because no such right exists. The Second Circuit long ago upheld the constitutionality of 18 U.S.C. § 875(c). United States v. Kelner, 534 F.2d 1020, 1026–27 (2d Cir. 1976). The Second Circuit explained that the statute is "consonant with the protection of First Amendment interests" as long as the meaning of "threat" is narrowly construed, as it has been by courts, to mean a "true threat." See id. ("This clarification of the scope of 18 U.S.C. § 875(c) is, we trust, consistent with a rational approach to First Amendment construction which provides for governmental authority in instances of inchoate conduct, where a communication has become so interlocked with violent conduct as to constitute for all practical purposes part of the (proscribed) action itself.") (citing T. Emerson, The System of Freedom of Expression 329.9 (1970)).

In upholding the constitutionality of Section 875(c), the Second Circuit was following the Supreme Court's decision in Watts v. United States, 394 U.S. 705, 705–08 (1969), which upheld the constitutionality of Section 875(c)'s companion statute, 18 U.S.C. § 871, which prohibits threats to the President's life. There, the Supreme Court drew a line between protected speech and unprotected speech, distinguishing between "vehement, caustic, and sometimes unpleasantly sharp attacks," which are protected by the First Amendment, and "true threats"—serious and avowed expressions of a present intent to injure—which have no constitutional protection. In Elonis, the Supreme Court specified that, in order to comport with the First Amendment, a Section 875(c) conviction requires the government to prove that the defendant intended his communication to be a threat or understood that it would be interpreted as such. 135 S. Ct. at 2011.

Therefore, as long as the government proves that the elements of Section 875(c), detailed supra Sec. 1, were met, the defendant cannot use the First Amendment as a shield in front of the jury. Indeed, the Second Circuit explained that the question of the application of the First Amendment to Section 875(c) is a legal question for the court rather than the jury. See Kelner, 534 F.2d at 1028. The government need only meet its burden in proving the elements of Section 875(c); argument or references about the First Amendment

7

or free speech would be legally impermissible and serve only to confuse the jury.  See Fed. R. Evid. 403.  Accordingly, the government respectfully requests that any arguments or reference to the defendant's right to make a threat be precluded.

III.    Conclusion

For the reasons discussed above, the government respectfully requests that the Court grant its motions in limine.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/ Andrew D. Grubin
       Andrew D. Grubin
       Philip Pilmar
       Assistant U.S. Attorneys
       (718) 254-6322/6106

cc:     Kannan Sundaram, Esq. (By ECF)
       Clerk of the Court (KAM) (By ECF)