**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

September 26, 2019

**By ECF**
The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn New York 11201

        Re:    United States v. Frank Segui
                  19-CR-188 (KAM)

Dear Judge Matsumoto:

    I write in response to the government's motions *in limine*. (*See* ECF No. 28, First Motion *in Limine* by USA at 2) ("Gov. Mot."). In its motion the government seeks rulings from the Court permitting the government to introduce various pieces of evidence and precluding the defense from making arguments relating to the First Amendment to the jury. Since the defense agrees that the question of the application of the First Amendment to Section 875© is a legal question for the Court rather than the jury, we do not intend to present any such evidence or arguments to the jury. (*See* Gov. Mot. at 7). Accordingly, we address here only Part II.A. of the government's motion, relating to the evidence the government seeks to admit.

    The government has charged Mr. Segui with a single count of Transmission of Threat to Injure, in violation of 18 U.S.C. § 875©. The indictment alleges that on or about October 30, 2018, Mr. Segui "did knowingly and intentionally transmit in interstate commerce a communication containing a threat to injure the person of another, to wit: a communication threatening the life of, and threatening bodily injury to, John Doe, an individual whose identity is known to the Grand Jury." (ECF No. 13, Indictment). The communication in question is an email Mr. Segui is alleged to have sent on that date to a professor for whom he had previously worked as a teaching assistant at a university in the Western District of Michigan. (*See* ECF No. 28, First Motion *in Limine* by USA at 2) ("Gov. Mot.").

    That email, which is attached as an exhibit to the governments' motion, lodges various grievances and then states, among other things: "You're all monsters. You don't deserve life. The world would be better without you" and "Your monsters just the same. What's fucked up is I

know you guys covered your tracks anything short of tying you down and cutting off your fingers there [sic] no way you will ever admit to any wrong doing.  You'll just claim I'm crazy and continue ruining my life till the day I die."  (Gov. Mot., Exhibit 1) at 2).

In its motion, the government seeks to admit not only *prior communications Mr. Segui sent to the professor* – to which the defense will not object – but also *subsequent conduct, unknown to the professor, indicating that Mr. Segui was planning to injure or kill him*.  This includes Google searches in the following months regarding how to travel to the city where the professor lived and evidence that Mr. Segui "was arrested at Port Authority on February 22, 2019, en route to carry out his threat to kill" the professor, according to his post-arrest statements to law enforcement.  (*See* Gov. Mot. at 4).

As the government's own recitation of the statutory elements makes clear, however, Mr. Segui's subsequent actions, not communicated to or known by the professor, have no relevance to any element of the charged offense.  18 U.S.C. § 875©, "Interstate communications," states in relevant part:  "Whoever transmits in interstate [] commerce any communication containing any [] threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."

As the Supreme Court has held, "the mental state requirement in Section 875© is satisfied if the defendant transmits a communication *for the purpose of issuing a threat*, or with *knowledge that the communication will be viewed as a threat*."  *Elonis v. United States*, 135 S.Ct. 2001, 2012 (2015) (emphasis added).  As the government correctly states, "[t]he test is an objective one – namely whether an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury."  *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) (cited in Gov. Mot. at 4-5; *United States v. White*, 810 F.3d 212, 221 (4th Cir. 2016) ("the prosecution must show that an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret it as a serious expression of an intent to do harm.").

Applying these standards, the government plausibly explains why Mr. Segui's "prior communications to [the professor] and draft communications near in time to the October 2018 Email" would be relevant to proving the charged offense: Those communications sent by Mr. Segui to the professor "demonstrate both [the professor's] concern upon reading the October 2018 Email and the defendant's mental state when sending the email."   (Gov. Mot. at 3).

The government's attempt to sneak Mr. Segui's subsequent, undisclosed conduct into the same category, however – "The defendant's Google search history, post-arrest statements about carrying out his threats, and evidence of the axe and bus ticket are likewise direct evidence of the communication's seriousness and how the communication was meant to be received" – is an entirely different matter.  The issue under the statute is whether the defendant intended, or at least knew, that the October 2018 Email would be *viewed as a threat by the professor* and whether an ordinary, reasonable *recipient* of the email would *interpret it as* a threat of injury.  *See Elonis*, 135 S.Ct. at 2012; *Malik*, 16 F.3d at 49; *United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir. 2001) ("In determining the existence of a threat . . . this circuit had adopted an objective test, focusing on whether a reasonable person would find that a threat existed."); *see also* Gov. Mot. at 5 ("that the

2

defendant intended *the communication to be received by the victim as a threat*"; "that a reasonable *recipient would have considered the communication to be threatening* rather than hyperbole, or at least that *the defendant understood that the communication would be received as threatening* under the circumstances") (emphasis added). Mr. Segui's alleged actions in Googling information about the professor and buying an axe and a bus ticket months later could have no possible bearing on those issues unless Mr. Segui communicated or otherwise disclosed those actions to the professor. But there is no allegation that he did.

The intent proscribed by Section 875© is the intent to threaten injury, not cause it. *See United States v. Viefhaus*, 168 F.3d 392, 396 (10th Cir. 1999) ("It is the making of the threat and not the intention to carry out the threat that violates the law"; interpreting 18 U.S.C. § 844©, which proscribes making a threat concerning an attempt being made kill, injure or intimidate b means of fire or an explosive). Since the undisclosed conduct months after the October 2018 email has no bearing on any element of the charged offense – and hence on any "fact [] of consequence in determining the action," Fed. R. Evid. 401(b) – it is irrelevant and therefore inadmissible.

Given that the conduct relating to the internet searches and the purchases of the axe and the bus ticket has no relevance to the charged offense and occurred after the fact, it is not "inextricably intertwined with the evidence regarding the charged offense" or necessary "to complete the story of the crime [on] trial" or to provide background and context. (*See* Gov. Mot. at 6). To the contrary, the government could in this case easily and coherently tell the story of Mr. Segui's "perceived grievances" leading up to the October 2018 email and stop there without confusing anyone. (*See id.*).

If, as the government fears, the evidence of Mr. Segui's communications to the professor up to and including the email might not be enough for "the government to show that" the email "was not a one-time, flash of passion that should be brushed aside as hyperbole[,]" then that just means the government's case is insufficient. (*See id.*). For, as previously discussed, the crime the government charged in this case requires it to prove that Mr. Segui intended or knew that the email would be viewed as a threat by the professor, and his undisclosed subsequent conduct doesn't do anything to prove that. Since that undisclosed conduct thus does not demonstrate that "the purpose of the [October 2018] communication was to instill fear in" the professor, the government's Rule 404(b) argument fails for the same reason.[1] As the government itself acknowledges, evidence of "other acts" under Rule 404(b) is not admissible unless "relevant under Fed. R. Evid. 402." (Gov. Mot. at 6, quoting *United States v. Pascarella*, 84 F.3d 61. 69 (2d Cir. 1996).

---

[1] The government further states: "The evidence, such as the post-arrest statements, would likewise show the defendant's awareness of the threatening nature of the communication. Additionally, some of the evidence, like the post-arrest statements and other communications, establish the defendant's motive for threatening [the professor]. Thus, this evidence is admissible under Rule 404(b)." (Gov. Mot. at 7). Unlike the government's proposed evidence of post-email conduct that was never communicated to the professor, evidence showing Mr. Segui's awareness of the threatening nature of the email communication would be admissible. Evidence that would establish his motive for threatening the professor might be admissible as well. The government, however, has not identified exactly what evidence it would be seeking to admit on that basis, so the defense is not in a position to address that.

In any event, even if the evidence were deemed to have some relevance, it should be excluded pursuant to Rule 403. Rule 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

As set forth above, the issue Mr. Segui's jury will be called upon to decide is not whether he intended to actually injure his professor but, rather, whether he intended, in the October 2018 email, to convey a threat of injury that his professor would interpret as a serious one. For the reasons we have stated, the government's proposed evidence that Mr. Segui later engaged in conduct indicating an intent to injure the professor does nothing to prove an intent to threaten unless that conduct was disclosed to the professor.

Even if the Court somehow discerned some probative value in the proposed evidence of Mr. Segui's post- email conduct, it must then weigh that probative value against the danger of unfair prejudice to Mr. Segui. A paramount consideration in that assessment is whether the proffered evidence involves conduct more sensational or disturbing than the crime with which the defendant has been charged. *See United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992). In this case, it is not a close question: Evidence that Mr. Segui planned to kill the professor, researched different ways of doing it and then purchased an axe, is infinitely more disturbing than the charged conduct of sending an email threatening to injure or even kill him. If a jury tasked with deciding whether the government had proven an intentional threat of injury were to hear that much more disturbing evidence, the danger that they would unfairly convict him on that basis cannot be overstated.

For the reasons set forth above, the Court should deny the government's motion to admit evidence of Mr. Segui's Google search history and his February 2019 arrest and evidence stemming therefrom. (*See* Gov. Mot. at 4, Section II.A..1.b., c.).

Respectfully Submitted,

/s/

Kannan Sundaram
Assistant Federal Defender
(718) 330-1203

cc: Andrew D. Grubin
 Philip Pilmar
 Assistant U.S. Attorneys

 Clerk of the Court (KAM)

4