UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

UNITED STATES OF AMERICA,

       v.

FRANK SEGUI,

          *Defendant*.

--------------------------------X

**MEMORANDUM & ORDER**

19-cr-188(KAM)

**MATSUMOTO, United States District Judge:**

On February 22, 2019, Frank Segui ("Mr. Segui") was arrested by Port Authority Police Officers at the Port Authority Bus Terminal (the "Bus Terminal"), located at 625 Eighth Avenue in Manhattan, New York, for refusing to leave the "Snacks-N-Wheels" food establishment and harassing one of the establishment's employees. Following his arrest, Mr. Segui told an officer of the Port Authority Police Department that he intended to travel to Michigan to kill his former professor, setting in motion further questioning and leading to the issuance and execution of search warrants which revealed evidence of Mr. Segui's plan.

On April 23, 2019, Mr. Segui was indicted by a grand jury in the Eastern District of New York for Transmission of Threat to Injure, in violation of 18 U.S.C. § 875(c). (ECF No. 13, Indictment ("Ind.").) Mr. Segui's indictment relies principally on an October 30, 2018 email from Mr. Segui to his

former professor, which was identified during execution of the aforementioned search warrants. After pleading not guilty and electing to proceed to trial, Mr. Segui moved pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure to suppress the October 30, 2018 email and all other evidence obtained as a result of his February 22, 2019 arrest at the Bus Terminal, which, Mr. Segui argues, was effected without probable cause. (ECF No. 26, Defendant's Motion to Suppress ("Def. Br.").)

On October 10, 2019, the Court held an evidentiary hearing on Mr. Segui's motion to suppress. The Government called as a witness Port Authority Police Officer Jillian Biagini ("Officer Biagini") who, along with two colleagues, arrested Mr. Segui on February 22, 2019. In light of Officer Biagini's credible testimony and the parties' respective submissions on this subject, and for the reasons set forth below, the Court finds that there was probable cause to arrest Mr. Segui and, therefore, denies his motion to suppress.

## Findings of Fact[1]

On February 22, 2019, at approximately 4:15 p.m., Port Authority Police Officers Biagini, Lomando ("Officer Lomando"), and Hemmer ("Officer Hemmer") responded to a disturbance call

---

[1] Unless otherwise indicated, the facts in this section were established by the exhibits and the credible testimony of Officer Biagini at the evidentiary hearing held before the Undersigned Judge on October 10, 2019.

from Snacks-N-Wheels, a Greyhound-operated food establishment located in the lower level of the Bus Terminal. (Transcript of October 10, 2019 Suppression Hearing ("Tr."), at 7:13-8:19.) Officer Biagini led the response, with Officers Lomando and Hemmer providing back up. (*Id.* at 8:20-24.)

Upon arriving at the scene, Officer Biagini spoke with Jerry Hobbs ("Mr. Hobbs"),[2] the 60-year-old Snacks-N-Wheels employee who reported the disturbance. (*Id.* at 8:25-9:06.) Mr. Hobbs was the only employee working at Snacks-N-Wheels that day. (*Id.* at 9:07-09.) Mr. Hobbs informed Officer Biagini that "there was an individual refusing to leave the area." (*Id.* at 9:10-13.) Officer Biagini later learned that this individual was Mr. Segui (and identified him in court during the October 10, 2019 suppression hearing). (*Id.* at 9:14-17.)

After speaking to Mr. Hobbs, Officer Biagini approached Mr. Segui. (*Id.* at 10:15-16.) Officer Biagini asked Mr. Segui "if he was buying any food, [and] he stated no." (*Id.* at 10:17-21.) As described by Officer Biagini, and as shown in photographs admitted as Government Exhibits 1 through 8,[3] Snacks-

---

[2] At the evidentiary hearing, Officer Biagini referred to Mr. Hobbs only by his surname. Mr. Hobbs' first name is derived from Mr. Segui's supplemental brief in support of his motion to suppress, filed with the Court on October 22, 2019. (*See* Def. Supp. Br. at 1.)

[3] The Government introduced Government Exhibits 1 through 8, pictures of Snacks-N-Wheels, which Officer Biagini testified were true and accurate depictions of Snacks-N-Wheels as it existed on February 22, 2019. (*Id.* at 15:07-25; *see also* Exs. 1-8.)

N-Wheels had "clearly posted" signs "[indicating] that [its facilities are] for food customers only." (*Id.* at 10:23-24.) These signs read as follows: "Seating is for food service customers only. All others are asked to find seating elsewhere so our customers may enjoy their meals." (*Id.* at 20:16-21:04; Government's Exhibit 3.)

Officer Biagini explained to Mr. Segui "why he needed to leave" the establishment, namely, for noncompliance with the establishment's "food customers only" policy. (Tr. at 10:17-21.) Mr. Segui initially complied and began to exit the area, walking side-by-side with Officers Biagini, Lomando, and Hemmer. (*Id.* at 11:02-21.) Officer Biagini did not place Mr. Segui under arrest at this time, and explained her decision as follows: "As a police officer we can get discretion. At that time the defendant was compliant, and he was, you know, walking out no problem. So with my discretion, we were just going to let him leave the area." (*Id.* at 42:16-23.)

As Mr. Segui walked out of the establishment, he and Mr. Hobbs "exchanged words with each other." (*Id.* at 11:22-25.) Officer Biagini did not remember the tone of the exchange or what these individuals said to each other. (*Id.* at 35:24-36:10.) "After the words were exchanged, [Mr. Segui] turned around and charged towards [Mr. Hobbs]." (*Id.* at 12:03-09.)

Officer Biagini used images of Snacks-N-Wheels introduced as Government Exhibits 1 through 8 to illustrate Mr. Segui's path back into the establishment.  The exhibits showed that Snacks-N-Wheels was an establishment in excess of thirty feet, with exits at opposite ends of the area and "six or seven" sitting or standing tables in the middle.  (*See id.* at 20:04-06; 32:15-17.)  Before charging towards Mr. Hobbs, Mr. Segui and the accompanying officers were "close to the exit" at one side of the establishment.  (*See id.* at 21:08-25.)  After the pair "exchanged words," Mr. Segui turned back into Snacks-N-Wheels and ran towards the opposing exit, specifically, the clerk's counter, behind which stood Mr. Hobbs.  (*See id.* at 22:04-16; Government's Exhibit 1.)  Mr. Segui ran roughly thirty feet and managed to reach the counter, round its corner, and make it behind the counter to within five or ten feet of Mr. Hobbs before being subdued by the officers.  (*See id.* at 22:17-25, 23:20-24:22.)  The officers "physically had to grab [Mr. Segui] to stop him from reaching Mr. Hobbs."  (*Id.* at 45:02-08.)

Officer Biagini and her colleagues then informed Mr. Segui that he was being placed under arrest.  (*Id.* at 13:16-18.) They decided to arrest Mr. Segui at this point "[b]ecause [he] turned around, charged towards the employee, [and] continued to trespass."  (*Id.* at 42:24-43:05.)  Asked to clarify what she meant by "continued to trespass," Officer Biagini explained that

"[Mr. Segui] was asked to leave and he actually never left the establishment.  And after we told him to leave, he continued to stay in the establishment."  (*Id.* at 43:03-08.)  Officer Biagini also explained that the officers physically stopped Mr. Segui because "he was continuing towards Mr. Hobbs," and "[they] did not want [Mr. Hobbs] harmed."  (*Id.* at 45:02-08.)

Mr. Segui resisted arrest, "refus[ing] to give [the officers] his hands."  (*Id.* at 13:16-18.)  Instead, Mr. Segui "reached over the counter and grabbed onto the opposite side."  (*Id.* at 12:24-13:04.)  It took the officers approximately ten seconds to "overpower [Mr. Segui's] grip" and "put his hands in handcuffs."  (*Id.* at 13:19-14:01.)  Once subdued, Mr. Segui was "placed under arrest for harassment, trespass, and resisting arrest."  (*Id.* at 14:05-07.)  Officer Biagini identified trespass and harassment in the second degree as arrestable offenses under New York law.  (*Id.* at 26:07-12.)

Following his arrest, Mr. Segui was given *Miranda* warnings (Def. Br. at 1) and "escorted back to the police desk" (Tr. at 14:08-11).  Officer Biagini explained that it takes approximately two minutes to walk from Snacks-N-Wheels to the police desk.  (*Id.* at 14:12-14.)  During the walk, Mr. Segui, without prompting, stated to the officers that "he wanted to be arrested."  (*Id.* at 14:19-15:02.)  Upon arriving at the police desk, Mr. Segui made a statement to the Port Authority Police

Department Stationhouse Officer about "having a ticket to go to Michigan and about to kill his former professor." (*Id.* at 40:22-41:13.) Officer Biagini did not personally hear this statement. (*Id.* at 41:14-15.)

Mr. Segui was later turned over to the FBI for questioning. (Def. Br. at 1.) The FBI elicited the same statements made by Mr. Segui to the Port Authority Police Department, including (as summarized by defense counsel) that Mr. Segui planned to travel to Michigan to kill his former professor, and that Mr. Segui had previously purchased an axe for this purpose on the internet but left it in his parents' apartment. (*Id.*) The next day, FBI agents "went to Mr. Segui's parents' home, received his father's consent to search Mr. Segui's bedroom and closet, and recovered an axe, sheath[,] and packaging purchased on the internet[,] as [Mr. Segui] had described." (*Id.* at 1-2.)

In advance of the October 10, 2019 evidentiary hearing, Mr. Segui provided an affidavit setting forth his version of the foregoing events. (*See generally* ECF No. 26-1, Defendant's Affidavit in Support of Defendant's Motion to Suppress ("Def. Aff.").) The affidavit corroborated much of Officer Biagini's testimony. Mr. Segui conceded, *inter alia*, that as he waited in Snacks-N-Wheels, "[a] man working [there] asked [him] to leave," but "[he] did not leave." (*Id.* ¶ 2.)

Mr. Segui also conceded that, after initially complying with Officer Biagini's directive to exit the premises, he moved "toward[s] [Mr. Hobbs]," in violation of the orders made by Mr. Hobbs and Officer Biagini that he exit the establishment.  (*Id.*)

The primary discrepancies between Officer Biagini's testimony and Mr. Segui's affidavit are whether Mr. Segui "walked," rather than ran, towards Mr. Hobbs, and whether Mr. Segui resisted arrest.  (*See id.*)  The Court finds Officer Biagini's testimony to be credible and, to the extent her testimony conflicts with Mr. Segui's affidavit, the Court finds in favor of Officer Biagini's detailed, credible, and thorough account of the events leading to Mr. Segui's arrest.  Moreover, irrespective of whether Mr. Segui walked or charged back into the establishment towards Mr. Hobbs, or resisted arrest, Officer Biagini credibly described facts that would lead a reasonable officer to believe that Mr. Segui turned and charged towards Mr. Hobbs and then resisted arrest.[4]

---

[4] Mr. Segui's affidavit also states that he "didn't engage in fighting or in violent *or threatening* behavior."  (Def. Aff. ¶ 3 (emphasis added).)  Yet, Officer Biagini testified that she and her colleagues restrained Mr. Segui during his charge because they did not want Mr. Hobbs harmed.  (Tr. at 45:06-08.)  As described in Officer Biagini's testimony, it seems that from Mr. Segui's behavior, it appeared that Mr. Segui sought to harm Mr. Hobbs, and thus his act in charging at Mr. Hobbs could very reasonably be construed as threatening in nature.  In any event, the Court reiterates that it adopts Officer Biagini's credible account of the events over the disputed issues set forth by Mr. Segui in his affidavit.

## Procedural History

On February 25, 2019, Magistrate Judge Steven L. Tiscione signed a complaint authorizing the arrest of Mr. Segui for stalking, in violation of 18 U.S.C. § 2261A(2), and transmission of a threat to injure, in violation of 18 U.S.C. § 875(c). (ECF No. 1, Complaint ("Compl.").) On March 12, 2019, quoting in part Mr. Segui's statements at the Bus Terminal, an application for a search warrant was signed by Magistrate Judge Ramon E. Reyes, Jr. for Mr. Segui's computer. (ECF No. 30-1, Affidavit in Support of an Application Under Rule 41 for Warrants to Search and Seize, ¶¶ 13-14.) On April 23, 2019, a grand jury sitting in the Eastern District of New York returned an indictment of Mr. Segui, charging him with transmission of a threat to injure, in violation of 18 U.S.C. § 875(c). (Ind.) Jury selection and trial on this indictment are scheduled to commence on December 9, 2019.

On August 24, 2019, Mr. Segui moved pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure to suppress all evidence obtained by state and federal law enforcement authorities as a result of his February 22, 2019 arrest at the Bus Terminal, including his Mirandized post-arrest statements and all evidence obtained in their wake. (*See generally* Def. Br.) Mr. Segui's motion to suppress and corresponding affidavit focused on whether police had probable cause to arrest him for

disorderly conduct, and made only the conclusory allegation that police did not have probable cause "to believe that [Mr. Segui] had committed or was committing . . . *any other offense*."[5] (*Id.* at 4 (emphasis added).)

On September 12, 2019, the Government filed its opposition to Mr. Segui's motion to suppress. (ECF No. 30, Government's Opposition to Defendant's Motion to Suppress ("Gov't Br.").) The Government acknowledged that the complaint "mistakenly stated that the defendant had been arrested for disorderly conduct," but argued this was immaterial because Mr. Segui was actually arrested for harassment and trespass, and for resisting arrest. (*Id.* at 4.) The Government then argued that police had probable cause to arrest Mr. Segui for two offenses: (1) harassment in the second degree, in violation of N.Y. Penal Law § 240.26(1), because, as described by Officer Biagini, Mr. Segui "attempt[ed] or threaten[ed]" to subject Mr. Hobbs to physical contact by charging at him from across Snacks-N-Wheels; and (2) trespass, in violation of N.Y. Penal Law § 140.05, because Mr. Segui knowingly remained at Snacks-N-Wheels despite Mr. Hobbs' lawful order directing him to leave the premises, and

---

[5] This may be because the complaint filed in this action on February 25, 2019 stated that police arrested Mr. Segui for disorderly conduct in violation of N.Y. Penal Law § 240.20. (Compl. ¶ 8 ("While at the bus terminal, the defendant was arrested for disorderly conduct by a Port Authority . . . Police Officer.").)

because after Mr. Segui agreed to leave with the officers, he turned back and moved further into the establishment, reaching as far as behind the counter. (*Id.* at 5-6.)

On October 10, 2019, the Court held an evidentiary hearing regarding Mr. Segui's motion to suppress. (ECF Docket Entry, Oct. 10, 2019.) Officer Biagini, the arresting officer, was the sole witness. (*Id.*) Following the evidentiary hearing, Mr. Segui requested an opportunity to submit post-trial briefing, which the Court granted. (*Id.*) The parties' post-trial briefing addressed both Mr. Segui's motion to suppress evidence and the parties' motions *in limine*. The Government's briefs largely reiterated the arguments made in its initial opposition to Mr. Segui's motion to suppress. (*See generally* ECF No. 46, Government's Supplemental Opposition to Defendant's Motion to Suppress; ECF No. 49, Government's Supplemental Reply in Opposition to Defendant's Motion to Suppress.) In his post-hearing submission, Mr. Segui, for the first time, addressed whether police had probable cause to arrest him for either harassment or trespass, as the Government contends was the case. (*See generally* ECF No. 48, Defendant's Supplement Brief in Support of Defendant's Motion to Suppress ("Def. Supp. Br.").)

## Conclusions of Law

For the reasons set forth below, the Court finds that the Government has met its burden of establishing that there was

probable cause to arrest Mr. Segui on February 22, 2019 at the
Bus Terminal for (1) harassment in the second degree, N.Y. Penal
Law § 240.26(1), and (2) trespass, N.Y. Penal Law § 140.05.

## I. Probable Cause Standard

Mr. Segui argues that his arrest was invalid under the
Fourth Amendment, which protects "[t]he right of the people to
be secure in their persons . . . against unreasonable searches
and seizures." U.S. Const. amend. IV. "A warrantless arrest is
unreasonable under the Fourth Amendment unless the arresting
officer has probable cause to believe a crime has been or is
being committed." *United States v. Delossantos*, 536 F.3d 155,
158 (2d Cir. 2008) (citing *Devenpeck v. Alford*, 543 U.S. 146,
152 (2004); *United States v. Watson*, 423 U.S. 411, 417 (1976)).
On a motion to suppress, "[t]he Government bears the burden of
proof as to establishing probable cause." *Id.* (citing *United
States v. Elgisser*, 334 F.2d 103, 110 (2d Cir. 1964)).

"The requirement of probable cause does not create a
high bar for law enforcement." *Carpenter v. City of New York*,
984 F. Supp. 2d 255, 264 (S.D.N.Y. 2013). "'In general,
probable cause to arrest exists when the [arresting] officers
have knowledge or reasonably trustworthy information of facts
and circumstances that are sufficient to warrant a person of
reasonable caution in the belief that the person to be arrested
has committed or is committing a crime.'" *Gonzalez v. City of*

*Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Id.* (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)).

"To ascertain the existence of probable cause, [a court must] look at the facts as the officers knew them in light of the specific elements of each crime." *Id.* "While an officer 'need not have concrete proof of each element of a crime to establish probable cause for an arrest,' probable cause means 'more than bare suspicion.'" *Id.* (quoting *Brewton v. City of New York*, 550 F. Supp. 2d 355, 365 (E.D.N.Y. 2008); *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "And it certainly means more than suspicion of some generalized misconduct: 'no probable cause exists to arrest where a suspect's actions are too ambiguous to raise more than a generalized suspicion of involvement in criminal activity.'" *Id.* (quoting *United States v. Valentine*, 539 F.3d 88, 94 (2d Cir. 2008)).

The reviewing court must also be mindful of the United States Supreme Court's repeated admonition that "the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men [and women], not legal

technicians, act." *Delossantos*, 536 F.3d at 159 (quoting
*Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (internal
quotation marks omitted)). "Because the standard is fluid and
contextual, a court must examine the totality of the
circumstances of a given arrest." *Id.* (citing *Pringle*, 540 U.S.
at 370; *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).
"These circumstances must be considered from the perspective of
a reasonable police officer in light of his [or her] training
and experience." *Id.* (citing *United States v. Moreno*, 897 F.2d
26, 31 (2d Cir. 1990), *abrogated on other grounds by Horton v.
California*, 496 U.S. 128 (1990)).

## II. Probable Cause to Arrest Mr. Segui

In this action, the Court considers whether police had
probable cause to arrest Mr. Segui for (1) trespass, in
violation of N.Y. Penal Law § 140.05, or (2) harassment in the
second degree, in violation of N.Y. Penal Law § 240.26(1).
Based on the facts known to Officer Biagini, there was probable
cause to arrest Mr. Segui for both violations.

### a. Relevant Offenses

Before addressing why there was probable cause to
arrest Mr. Segui for the violations cited above, the Court will
address the inconsistencies between the charges specified in the
federal complaint, state arrest report, and state misdemeanor
complaint. The complaint filed in this federal criminal action

mistakenly stated that Mr. Segui was arrested for disorderly conduct. (*See* Compl. ¶ 8.) Mr. Segui was actually arrested for the following offenses:

- Criminal Trespass in the Second Degree, in violation of N.Y. Penal Law § 140.15 (a misdemeanor);

- Harassment in the Second Degree, in violation of N.Y. Penal Law § 240.26 (a violation); and

- Resisting Arrest, in violation of N.Y. Penal Law § 205.30 (a misdemeanor).

(*See* Gov't Br. at 2.) The day after the arrest, and after consulting with the New York County District Attorney's Office, Officer Biagini swore out a misdemeanor complaint setting forth slightly different charges:

- Criminal Trespass in the Third Degree, in violation of N.Y. Penal Law § 140.10(a) (a misdemeanor);

- Trespass, in violation of N.Y. Penal Law § 140.05 (a violation);

- Harassment in the Second Degree, in violation of N.Y. Penal Law § 240.26(1) (a violation); and

- Resisting Arrest, in violation of N.Y. Penal Law § 205.30 (a misdemeanor).

(*Id.*) Ultimately, the District Attorney declined to prosecute Mr. Segui for any of the foregoing charges, but that decision has no bearing on the Court's analysis of his motion to suppress. *See, e.g.*, *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) ("[T]he validity of an arrest does not

depend on an ultimate finding of guilt or innocence." (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967))).

That there are differences between the offenses cited in the federal complaint, the state arrest report, and the state misdemeanor complaint is of no consequence to the probable cause analysis. As the United States Supreme Court has squarely held, the arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153; *see also Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("[A]n arresting officer's state of mind (except for the facts that he [or she] knows) is irrelevant to the existence of probable cause. Thus, an officer's subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause; an arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime." (internal citations and quotation marks omitted)).

The Court nevertheless addresses this topic because, at least initially, the parties addressed different charges in their briefing. (*Compare* Def. Br. (addressing whether there was probable cause to arrest Mr. Segui for disorderly conduct) *with* Gov't Br. (addressing whether there was probable cause to arrest

Mr. Segui for trespass or harassment in the second degree).)  As
noted above, the relevant charges are (1) harassment in the
second degree, in violation of N.Y. Penal Law § 240.26(1), and
(2) trespass, in violation of N.Y. Penal Law § 140.05.[6]

It is also important to bear in mind that under New
York law, an officer may arrest an individual without a warrant
for any offense.  N.Y. Crim. Proc. L. § 140.10(a).  But if the
offense is a violation, rather than a felony or misdemeanor, an
officer may make an arrest only when she has reasonable cause to
believe that the offense was committed in her presence.  *Id.*
Because both relevant offenses are violations, the Court must
also consider whether the Officer Biagini had reasonable cause
to believe that these offenses were committed in her presence.
*Walston v. City of New York*, 289 F. Supp. 3d 398, 412 (E.D.N.Y.
2018) ("[T]he fact that Plaintiffs were arrested for simple
trespass, a petty offense, does not render the arrest improper.
An officer may make an arrest for a violation, defined by New
York law as a 'petty offense,' N.Y. Crim. Proc. Law § 1.20(39),
if [s]he reasonably believes it was committed in h[er]

---

[6] Mr. Segui was also arrested for resisting arrest.  The Court need not
consider that charge here, as New York law makes clear that a person cannot
be guilty of resisting an unlawful arrest.  *People v. Dennis*, 823 N.Y.S.2d
830, 832-33 (2d Dep't 2006).  Furthermore, in his supplemental brief, Mr.
Segui addresses whether there was probable cause to arrest him for criminal
trespass in the third degree under N.Y. Penal Law § 140.10(a).  (Def.'s Supp.
Br. at 4.)  Since the Government has the burden of establishing probable
cause but did not raise this species of trespass as an offense for which
there was probable cause, the Court need not reach this question.

presence."); *Davis v. City of New York*, 373 F. Supp. 2d 322, 330 (S.D.N.Y. 2005) ("Although defendants did not have probable cause to arrest plaintiffs for unlawful posting or criminal trespass . . . probable cause existed for the lesser offense of simple trespass . . . .").  This was the case.

   b. <u>Harassment in the Second Degree (N.Y. Penal Law § 240.26)</u>

   Officer Biagini had probable cause to arrest Mr. Segui for harassment in the second degree.  Under New York Penal Law § 240.26(1), "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same."  N.Y. Penal Law § 240.26(1).[7]

---

[7] McKinney's Practice Commentary explains the relationship between this particular species of harassment in the second degree and assault:

   The "crux" of [240.26(1)] is the "element of physical contact: actual, attempted or threatened."  *People v. Bartkow*, 96 N.Y.2d 770, 772 (2001).  While related to assaultive conduct, under the current Penal Law, a consummated assault requires that the actor at least cause "physical injury," i.e., the "impairment of physical condition or substantial pain" [Penal Law § 10.00(9)].  The definition of "physical injury" was, however, intended to exclude such things as "petty slaps, shoves, kicks and the like."  Staff Notes of the Commission on Revision of the Penal Law.  Proposed New York Penal Law.  McKinney's Spec. Pamphlet (1964), p. 330.  *See* Practice Commentary to Penal Law article 120.  Thus, if such conduct is committed or attempted "with intent to harass, annoy or alarm," it is more appropriately prosecuted as the violation of "harassment in the second degree" rather than assault.  And a "single incident" of such conduct is "legally sufficient to support a finding of harassment in the second degree."  *Tamara A. v. Anthony Wayne S.*, 110 A.D.3d 560, 561, 974 N.Y.S.2d 48, 49 (1st Dept. 2013).

N.Y. Penal Law § 240.26 (McKinney Practice Commentary to Subdivision 1).

The facts known to Officer Biagini provided probable cause that Mr. Segui had, in her presence, committed harassment in the second degree. As described above, after the pair "exchanged words," Mr. Segui charged thirty feet back into Snacks-N-Wheels towards Mr. Hobbs and made it within feet of him before being subdued by the officers. (Tr. at 11:22-25, 12:21-13:8, 26:20-23.) Officer Biagini's testimony demonstrated the distance Mr. Segui traveled and provided context as to how fast Mr. Segui must have been moving to have reached within feet of Mr. Hobbs before being subdued. (*See generally id.* at 18:08-26:12.) It also bears mention that the officers subdued Mr. Segui "[b]ecause [Mr. Segui] was continuing towards Mr. Hobbs" and they "*did not want [Mr. Hobbs] harmed*." (*Id.* at 45:02-08 (emphasis added).) Based on the circumstances, the officers had reasonable concern that Mr. Segui intended, and was attempting or threatening, to harm Mr. Hobbs.

Mr. Segui nevertheless raises two reasons why he believes Officer Biagini lacked probable cause to arrest him for harassment in the second degree. Neither is persuasive.

*First*, Mr. Segui argues that "it was not shown [at the evidentiary hearing] that [he] acted with the requisite intent to harass, annoy[,] or alarm Mr. Hobbs." (Def. Supp. Br. at 4.) But "[i]t is well established that '[i]ntent may be inferred from conduct as well as the surrounding circumstances.'" *People*

*v. Kelly*, 913 N.Y.S.2d 846 (4th Dep't 2010) (quoting *People v. Steinberg*, 79 N.Y.2d 673, 682 (1992)); *see also, e.g.*, *People v. Munoz*, 95 N.Y.S.3d 125 (Crim. Ct. 2018) (table) (applying this principle to charge of harassment in the second degree). Moreover, "[w]hen assessing an individual's state of mind as part of a probable cause determination, police officers are granted 'great' 'latitude' 'because the practical restraints on police in the field are greater with respect to ascertaining intent.'" *Carpenter*, 984 F. Supp. 2d at 264 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013)).

Based on the circumstances described above, Officer Biagini could have reasonably inferred from Mr. Segui's actions and the surrounding circumstances that he intended to harass, annoy, or alarm Mr. Hobbs. *See, e.g.*, *Munoz*, 95 N.Y.S.3d 125 (evidence sufficient to sustain charge of harassment in second degree where "defendant swung his closed fist at [a police officer] with the intent to cause physical injury to him" because "it [could be] reasonably inferred that [defendant] did so with the 'intent to harass, annoy or alarm' [the police officer]"); *People v. Hernandez*, 998 N.Y.S.2d 51 (1st Dep't 2014) (evidence sufficient to uphold conviction for harassment in second degree where defendant swung his fist at a police officer, even when defendant was acquitted of attempted assault).

*Second*, Mr. Segui argues that his actions could not constitute an attempt to harass because he was never within striking distance of Mr. Hobbs.  (Def. Supp. Br. at 4.)  To constitute an attempt under New York law, an act "need not be the final one towards the completion of the offense, but it must carry the project forward within dangerous proximity to the criminal end to be attained."  *People v. Bracey*, 41 N.Y.2d 296, 300 (1977); *see also United States v. Desena*, 287 F.3d 170, 178 (2d Cir. 2002) ("To satisfy the 'dangerously near' standard, the defendant must have carried the project forward to within 'dangerous proximity' of the intended crime, though he need not take the final step to effectuate that crime.").  In other words, New York courts impose liability where a defendant comes "very near to the accomplishment of the intended crime."  *People v. Chandler*, 673 N.Y.S.2d 100, 101 (1998).

Mr. Segui argues that he "did not come dangerously close to striking, shoving, or kicking the Greyhound employee" because "[t]he record shows that Mr. Segui stopped when he was some ten feet away from the Greyhound employee, well out of striking distance by the officer's admission."  (*Id.* at 5.)  This argument is unavailing.  It is important to consider the entirety of the circumstances in determining whether Mr. Segui was dangerously close to completing the crime.  After moving rapidly over thirty feet – making it to the counter, around the

corner, and behind the counter within just five or ten feet or Mr. Hobbs – Mr. Segui did not stop voluntarily but, rather, was finally subdued by the officers. Had it not been for the officers, Mr. Segui was "within dangerous proximity" of making physical contact with Mr. Hobbs, and – by virtue of charging him – had already threatened to do so. It is, consequently, incorrect for Mr. Segui to assert that he was not "dangerously close" simply because he happened to be stopped by police before he was able to make physical contact with Mr. Hobbs.

In any event, "the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men [and women], not legal technicians, act." *Delossantos*, 536 F.3d at 159 (quoting *Pringle*, 540 U.S. at 370 (internal quotation marks omitted)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* What matters here is that based on what Officer Biagini observed, it was reasonable for her to conclude that Mr. Segui was attempting or threatening to subject Mr. Hobbs to physical contact, and that she therefore had probable cause to arrest Mr. Segui for harassment in the second degree.

c. Trespass (N.Y. Penal Law § 140.05)

Officer Biagini also had probable cause to arrest Mr.
Segui for trespass.  Under New York Penal Law § 140.05, "[a]
person is guilty of trespass when he knowingly enters or remains
unlawfully in or upon premises."  Relevant here,

> A person "enters or remains unlawfully" in or upon premises
> when he is not licensed or privileged to do so.  A person
> who, regardless of his intent, enters or remains in or upon
> premises which are at the time open to the public does so
> with license and privilege *unless he defies a lawful order
> not to enter or remain*, *personally communicated to him by*
> the owner of such premises or *other authorized person*.  A
> license or privilege to enter or remain in a building which
> is only partly open to the public is not a license or
> privilege to enter or remain in that part of the building
> which is not open to the public.

N.Y. Penal Law § 140.00(5) (emphasis added).  "Where, as here,
the alleged trespass occurred on premises generally open to the
public, the State has the burden of proving three elements to
support a *prima facie* case of criminal trespass: (1) that a
lawful order excluding the defendant from the premises was
issued, (2) that the order was communicated to the defendant by
a person with authority to make the order, and (3) that the
defendant defied that order."  *Carpenter*, 984 F. Supp. 2d at 265
(citing *People v. Munroe*, 853 N.Y.S.2d 457, 458 (2d Dep't
2007)); *see also Bang v. Utopia Rest.*, 923 F. Supp. 46, 49
(S.D.N.Y. 1996) (stating that it is not unlawful to "remain in a
restaurant that is open to the general public unless one 'defies

23

a lawful order not to enter or remain, personally communicated . . . by the owner of such premises or other authorized person'"").

Officer Biagini was entitled to conclude that Mr. Hobbs' and her own statements to Mr. Segui constituted lawful orders excluding him from Snacks-N-Wheels for failure to comply with its clearly posted "food customers only" policy. Officer Biagini was also entitled to conclude that the orders were communicated by persons authorized by Snacks-N-Wheels to do so – namely, a Snacks-N-Wheels employee and police officers acting at the behest of the employee – and that these statements were personally communicated to Mr. Segui (both because Mr. Hobbs informed Officer Biagini of this fact, *see Miloslavsky v. AES Engineering Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth."), and because Officer Biagini personally directed Mr. Segui to leave the premises). Finally, Officer Biagini witnessed Mr. Segui defy these lawful orders to depart, both when she saw Mr. Segui in Snacks-N-Wheels upon her arrival despite Mr. Hobbs' prior order that he leave, and when Mr. Segui charged back into the premises following her order that he leave the establishment.

In light of the foregoing, the Court finds that Officer Biagini had probable cause to believe that Mr. Segui committed trespass in violation of N.Y. Penal Code § 140.05. *See, e.g.*, *Berger v. Schmitt*, 91 F. App'x 189, 190 (2d Cir. 2004) (probable cause existed where supermarket security guard and police officer told plaintiff to leave premises but, after "start[ing] to depart," plaintiff "doubled back" and remained on premises); *Carpenter*, 984 F. Supp. 2d at 265 (probable cause existed where bank employees told protestors to move outside the bank and they failed to do so (citing *Munroe*, 853 N.Y.S.2d at 458)); *Omor v. City of New York*, No. 13-CV-2439, 2015 WL 857587, at *4 (S.D.N.Y. Feb. 27, 2015) (probable cause existed where staff of local government office told plaintiff to leave but he refused to do so); *People v. Carter*, 790 N.Y.S.2d 459 (1st Dep't 2005) (probable cause existed where defendant was "in an area of the Port Authority Bus Terminal restricted to ticket holders" "[o]nce [the] defendant admitted to the officer that he was not a bus passenger"); *People v. Nunez*, 943 N.Y.S.2d 857 (Crim. Ct. 2012), *aff'd*, 454 N.Y.S.2d 290 (2d Dep't 1982) (defendant not entitled to refuse to leave privately-owned public space when so ordered by police, so allegation that he failed to leave when so ordered was facially sufficient to support charge of trespass).

Mr. Segui, however, argues that there was no probable cause to arrest him for trespass for several reasons, none of which persuades the Court that suppression is warranted.[8]

*First*, Mr. Segui argues that "the record . . . shows that Mr. Segui could have reasonably believed the Snacks-N-Wheels area was open to the public."  (Def. Supp. Br. at 3.) This appears to be a reference to the principle that "[a]n individual accused of criminal trespass may raise as a defense that he 'honestly believed that he was licensed or privileged to enter.'"  *Carpenter*, 984 F. Supp. 2d at 265 (quoting *People v. Basch*, 365 N.Y.S.2d 836, 840 (1975)).  Mr. Segui's argument misses the mark because it lacks support in the record and because it misapprehends the obligation of an arresting officer to consider evidence of exculpatory defenses.

In arguing that the "reasonable belief" defense should apply, Mr. Segui seems to focus primarily on his right to *enter* Snacks-N-Wheels on the grounds that the establishment is generally open to the public.  As noted above, under New York law, a person can be liable for trespass when he knowing "enters *or* remains unlawfully in or upon premises."  N.Y. Pen. L. § 140.05 (emphasis added).  "[U]nlawful entry and unlawful

---

[8] At the outset, the Court notes that it was somewhat difficult to address Mr. Segui's meandering arguments, which appear to raise and intertwine several distinct issues.  Many others are unsupported by citations to appropriate legal authority or facts in the record.  The Court will, in any event, address each of Mr. Segui's contentions.

remaining are mutually exclusive theories." *Winkfield v. Duncan*, No. 12-CV-3237(ARR), 2013 WL 597595, at *14 (E.D.N.Y. Feb. 15, 2013); *Thomas v. City of New York*, No. 09-CV-3162(CM)(HBP), 2010 WL 5490900, at *11 (S.D.N.Y. Dec. 22, 2010) ("To have probable cause to believe that [the plaintiff] committed a trespass, the officers must also have known that *either* (1) [the plaintiff] entered the apartment without prior approval (i.e., his entry was unauthorized) *or* (2) [the plaintiff] had prior approval to be in the apartment but his permission was revoked by [the resident]." (emphasis added)).

Here, the Government does not argue that Mr. Segui unlawfully *entered* Snacks-N-Wheels. Rather, the Government argues that Mr. Segui unlawfully *remained* in Snacks-N-Wheels after being ordered to depart. The relevant inquiry would thus be whether Mr. Segui reasonably believed he had a right to remain at Snacks-N-Wheels, despite lawful orders that he depart. *See People v. Rodriguez*, 988 N.Y.S.2d 524 (2nd Dep't 2014) ("A person who enters or remains upon premises who honestly believes that he is licensed or privileged to so enter or remain, is not guilty of any degree of criminal trespass."); *Zaniewska v. City of New York*, No. 11-CV-2446, 2013 WL 3990751, at *7 (E.D.N.Y. Aug. 5, 2013), *aff'd*, 569 F. App'x 39 (2d Cir. 2014) ("[I]f plaintiff honestly believed that she was licensed to enter or

remain on the premises, she could not be found guilty of any degree of trespass.").

The evidence adduced at the evidentiary hearing does not support the position that Mr. Segui could reasonably have believed he was entitled to remain on Snacks-N-Wheels premises. Some of the evidence cited by Mr. Segui could conceivably support the argument that Mr. Segui reasonably believed he could enter Snacks-N-Wheels.[9] But it does not bear on whether it was reasonable for Mr. Segui to believe he could *remain* at Snacks-N-Wheels in the face of lawful orders to depart. Other assertions find little, if any, support in the record.[10] The closest Mr. Segui comes to asserting that he believed he had a right to *remain* in Snacks-N-Wheels is his statement that, "[a]s a ticketed Greyhound passenger, he would have a perfectly reasonable belief that he could lawfully . . . remain in the

---

[9] *See* Def.'s Supp. Br. at 3 ("Snacks-N-Wheels is a Greyhound establishment and is located in the lower sub mezzanine level of Port Authority where only ticketed Greyhound passengers may enter."); *id.* ("[T]he Snacks-N-Wheels dining area is centrally located in the Greyhound boarding area, with doors clearly propped open and directly adjacent to bus gates.").

[10] Def.'s Supp. Br. at 3 (arguing that "[Mr. Segui] could have reasonably assumed that he was a food service customer since he had purchased food while at Port Authority" without citing to evidence in the record that Mr. Segui actually purchased food); *id.* (arguing that "the sign itself states only that seating is for food service customers only and does not by its terms state that others must leave the premises entirely," but ignoring evidence establishing that Mr. Segui was occupying a table and had been directed to vacate the premises); *id.* (arguing that "[e]ven [the posted sign] is hardly a conspicuous or clear notice that non-food service customers must leave the premises," in contrast to Officer Biagini's testimony and the photographic evidence (*see* Government Exhibits 1 - 8) at the evidentiary hearing regarding the placement and visibility of the signs).

Snacks-N-Wheels area, owned and operated by Greyhound." (Def. Supp. Br. at 3.) But again, Mr. Segui's assertion does not suffice to show that he reasonably could have believed he had a right to remain in Snacks-N-Wheels despite at least two lawful orders to leave. In sum, none of the evidence cited by Mr. Segui supports the position that it was "reasonable, under the facts and circumstances established, for [Mr. Segui] to conclude that he had a license or privilege to remain on the premises." *See Rodriguez*, 988 N.Y.S.2d 524.

Furthermore, "[a]n arresting officer has no duty to investigate exculpatory defenses, or to assess the credibility of claims regarding exculpatory defenses." *Carpenter*, 984 F. Supp. 2d at 265. "Once a police officer has a reasonable basis for believing there is probable cause, [s]he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). Probable cause may be negated if the officer "disregard[s] facts known to [her] which establish" an exculpatory defense. *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003). But probable cause is "not eliminated . . . by the mere existence of evidence that could permit a conclusion of innocence." *Carpenter*, 984 F. Supp. 2d at 265. The facts established at the evidentiary hearing demonstrate that this case, if anything, falls into the latter category.

*Second*, Mr. Segui argues that "Mr. Hobbs lacked a lawful basis to eject [him]" from Snacks-N-Wheels. (Def. Supp. Br. at 3.) "The term 'lawful', as used in the phrase 'lawful order not to . . . remain', refers to the laws which preclude property owners from excluding persons from private or quasi-public property for reasons such as race, creed, color, national origin, or religion." *Warren v. Byrne*, 699 F.2d 95, 98 (2d Cir. 1983). Mr. Segui sets forth no evidence or legal authority showing that the exclusion was based on such an improper consideration or "predicated on or impermissibly inhibit[ed] a constitutionally or a statutorily protected activity." *People v. Leonard*, 62 N.Y.2d 404, 411 (1984). To the contrary, the facts strongly suggested that the order was lawful. Mr. Hobbs was an employee of Snacks-N-Wheels, a Greyhound-run establishment, and issued a limited order excluding Mr. Segui in accordance with clearly posted store policy. Without evidence of any improper consideration at play, it was reasonable for Officer Biagini to conclude that Mr. Segui had been lawfully ordered to leave Snacks-N-Wheels and was refusing to do so.[11]

---

[11] Mr. Segui also appears to argue that Snacks-N-Wheels could not lawfully exclude him "at will" because "Port Authority is a public facility, and at best [the lower-level which contains Snacks-N-Wheels] can be deemed a semi-public space operated by Greyhound." (Def.'s Supp. Br. at 3.) However, Mr. Segui cites no authority supporting the view that Snacks-N-Wheels – a food establishment operated by a private company in an area set off from the remainder of the Bus Terminal – is analogous to the Bus Terminal itself. *See, e.g.*, *People v. Wilson*, 122 Misc. 2d 55, 58, 469 N.Y.S.2d 905, 907–08 (City Ct. 1983) (distinguishing between a public plaza and stores contiguous to the plaza); *Carter*, 790 N.Y.S.2d 459 (distinguishing between general and

*Finally*, Mr. Segui argues that "the mere act of turning around and moving in the direction of the Greyhound employee is too benign an action to warrant a sudden trespass on property." (Def. Supp. Br. at 3.) Mr. Segui's arguments are unsupported by the credible evidence in the record. To start, it is not correct that Mr. Segui's trespass was "sudden." This suggests that Mr. Segui was not trespassing before charging towards Mr. Hobbs, despite having remained on the premises in the face of an order to leave. Moreover, Mr. Segui's argument that he merely and benignly turned around is belied by Officer Biagini's credible testimony that Mr. Segui had "continued" to trespass, and that he was not placed under arrest prior to that time only because he appeared compliant. (Tr. at 42:20-43:08.) Mr. Segui is also incorrect that Mr. Segui "had [not] been lawfully ordered to leave at the time of the verbal exchange." (Def. Supp. Br. at 3.) Not only did Officer Biagini learn from

---

ticketholder-only areas of Bus Terminal, and finding exclusion of individual from ticketholder-only area permissible due to lack of ticket).

Moreover, even if such authority existed, it would not change the fact that it was reasonable for Officer Biagini to conclude, under the circumstances, that Mr. Hobbs had authority to exclude Mr. Segui for failure to comply with Snacks-N-Wheels policy. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 206 (2001) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution."); *Berger v. Schmitt*, No. 02-CV-0155E(SR), 2003 WL 21383007, at *2 (W.D.N.Y. Apr. 18, 2003), *aff'd*, 91 F. App'x 189 (2d Cir. 2004) (citing *Saucier* in addressing argument that party lacked authority to lawfully exclude plaintiff from premises and concluding that, "[n]onetheless . . . [i]t was reasonable for [the police officer] to conclude that [the individual] had authority to expel [plaintiff] from the premises"); *United States v. Jenkins*, 324 F. Supp. 2d 504, 509 (S.D.N.Y. 2004), *aff'd*, 452 F.3d 207 (2d Cir. 2006).

Mr. Hobbs that Mr. Segui was refusing to leave the establishment, but she personally explained to Mr. Segui that he was required to leave the establishment.  (Tr. at 09:12-13; 10:19-11:04.)

Furthermore, there is no basis for Mr. Segui's argument that his conduct was somehow "too benign" to constitute a trespass.  Trespass frequently manifests in the form of what might be considered benign conduct, for instance, walking through or remaining on private property without permission. But Mr. Segui's conduct here, particularly in charging at Mr. Hobbs, was far from benign.  The Second Circuit's decision in *Berger v. Schmitt* is instructive.  There, "[the plaintiff] intervened in a verbal altercation between [a police officer] and a supermarket patron, [and the plaintiff] was told by both the supermarket security guard and [the police officer] to leave.  [The plaintiff] started to depart, but he doubled back in order to ask the various participants to the altercation for their names and contact information."  91 F. App'x at 190.  The Second Circuit held that "[b]ecause under New York law it is unlawful to remain on the premises after being personally given a lawful order to depart, . . . [the police officers] had probable cause to believe [the plaintiff] was trespassing."  *Id.* (citing *Navarro v. Fed. Paper Bd. Co.*, 586 N.Y.S.2d 381, 382-83 (App. Div. 1992)).  Mr. Segui's "charge" back towards Mr. Hobbs,

after twice being ordered to leave, is no more benign than the "doubl[ing] back" which was sufficient to give the officers probable cause to arrest the plaintiff for trespass in *Berger*.

## Conclusion

In sum, the Court concludes that Officer Biagini had probable cause to arrest Mr. Segui for harassment in the second degree and trespass. Mr. Segui's motion to suppress is therefore denied. The Court need not reach the Government's alternative argument that "[e]ven if the Court finds that the defendant's arrest was unlawful, Doe's trial testimony and the FBI's search of the defendant's computer pursuant to a judicially authorized warrant should not be suppressed because they are sufficiently attenuated from the defendant's state arrest and there is no evidence of bad faith on behalf of the Port Authority or the FBI." (Gov't Br. at 6.) The Court will address the parties' pending motions *in limine* (*see* ECF No. 28, Government's Motions *in limine*; ECF No. 29, Defendant's Motion *in limine*) in a separate Memorandum and Order.

**SO ORDERED.**

Dated:    Brooklyn, New York
           November 12, 2019

                                  /s/

                                  Hon. Kiyo A. Matsumoto
                                  United States District Judge