UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

UNITED STATES OF AMERICA,

$\phantom{xxxx}$v.

FRANK SEGUI,

$\phantom{xxxxxxxx}$*Defendant.*

--------------------------------X

**MEMORANDUM & ORDER**

19-cr-188(KAM)

**MATSUMOTO, United States District Judge:**

On April 23, 2019, a jury indicted Frank Segui ("Mr. Segui") for transmitting a threat to injure in violation of 18 U.S.C. § 875(c), based on an October 30, 2018 email Mr. Segui sent to his former professor.  (ECF No. 13, Indictment ("Ind.").)  Before the Court are the parties' motions *in limine*. (ECF No. 28, Government's Motions *in Limine* ("Gov't Br."); ECF No. 29, Defendant's Motion *in Limine* ("Def. Br.").)  For the reasons set forth below, the Court grants in part and denies in part the Government's motions *in limine*.  The Court denies Mr. Segui's motion *in limine* in its entirety.

### Background[1]

Between the Fall of 2013 and the Summer of 2016, Mr. Segui was a graduate student at a university located within the

---

[1] The Court does not accept the facts in this section as true.  They are included here exclusively to facilitate its rulings on the motions *in limine*. The Government must still establish their veracity at trial.

Western District of Michigan.  (ECF No. 1, Complaint in Support

of Arrest Warrant ("Compl."), ¶ 2.)  During this period, Mr.

Segui worked as a research assistant for a professor at the

university, John Doe.  (*Id.*)  Over time, Mr. Segui's

relationship with John Doe soured.  (*Id.* ¶ 3.)  Mr. Segui

"became very angry with . . . John Doe and blamed John Doe for

his lack of success" at the university.  (*Id.*)

        In October 2015, Mr. Segui emailed John Doe, copying

others at the university, "listing his grievances with John Doe

and stating that John Doe had broken numerous promises to him."

(*Id.*)  The university later informed Mr. Segui (at an

unspecified date) that he could receive a master's degree but

"could no longer continue his other graduate studies at the

university."  (*Id.* ¶ 4.)

        In June 2018, Mr. Segui returned from Michigan to

Brooklyn to live with his parents and resided with them until

February 2019.  (*Id.* ¶ 5.)  It was during this time that Mr.

Segui drafted and sent the October 30, 2018 email to John Doe,

again copying others at the university.  (*Id.* ¶ 6.)  Mr. Segui

concluded his email by issuing what the Government alleges was a

threat to injure John Doe:

    You need to understand someone [sic] though.  You're all
    monsters.  You don't deserve life.  The world would be
    better without you.  [John Doe] I'm so glad that son of
    yours is a mute deformed autistic little shit.  That's
    probably god's way of putting you in place.  [Redacted] and

the other fat one don't pretend like you didn't know.  Your
    [sic] monsters just the same.  What's fucked up is I know
    you guys covered your tracks anything short of tying you
    down and cutting off your fingers there [sic] no way you
    will ever admit to any wrong doing.  You'll just claim I'm
    crazy and continue ruining my life till the day I die.  I
    attached this to the original email I sent years ago.

(*Id.*)  The Chief of Police of the university was notified about

the foregoing email on the day it was sent.  (ECF No. 30,

Government's Opposition to Defendant's Motion to Suppress

("Gov't Opp. to Mot. to Suppress"), at 3.)  When John Doe later

spoke with law enforcement, he indicated that, "when he received

the [foregoing] email in 2018, he felt threatened and fearful

for his safety and the safety of his son, especially because

[Mr. Segui] specifically mentioned [John] Doe's son in the

email."  (Compl. ¶ 7.)  "Based on his interactions with [Mr.

Segui], John Doe felt that this was a credible threat."  (*Id.*)

        Mr. Segui appears to have remained focused on John Doe

for some time after the October 30, 2018 email.  On November 2,

2018, Mr. Segui drafted "a list of grievances, which focused on

[John] Doe, in what appears to be a letter to a third party."

(Gov't Br. at 2.)  Between November 23, 2018 and February 21,

2019, Mr. Segui searched on Google for: (1) ways to travel to

the city in Michigan where John Doe lived; (2) contact and

academic scheduling information for John Doe; (3) the cost of a

knife and a switch blade; (4) articles about Rikers Island; (5)

how to make and buy different types of poisons; (6) whether it

is possible to kill someone with a butter knife; (7) when it is legal to kill a person and justifiable homicide; and (8) articles about college students killing their professors. (*Id.* at 2-3.) On February 3, 2019, Mr. Segui "saved information about [John] Doe, which he found on the Internet, such as [John] Doe's class schedule and contact information, to a Microsoft Word document." (*Id.* at 3.)

On February 22, 2019, Port Authority Police Officers arrested Mr. Segui at the Port Authority Bus Terminal in Manhattan for harassment and trespass. (ECF No. 51, Memorandum & Order, at 6.) Mr. Segui was given *Miranda* warnings and agreed to speak with law enforcement. (Compl. ¶ 9.) Mr. Segui stated to police that he was planning to go to Michigan to kill his former professor; had purchased an axe for that purpose on the internet, which he had left at his parents' apartment in Brooklyn, New York; intended to purchase a new axe upon his arrival in Michigan, which he would use to kill John Doe; followed John Doe's class schedule to know when to kill him; and that his October 30, 2018 email was a "slight underhand threat." (*Id.* ¶¶ 9-10; Gov't Br. at 3.) Law enforcement traveled to Mr. Segui's parents' apartment in Brooklyn and received consent to search his former room and closet. (Compl. ¶ 11.) The search revealed the axe purchased on the internet, its sheath, and the packaging for the axe addressed to the defendant. (*Id.*)

On February 23, 2019, the day after Mr. Segui's arrest at the Port Authority Bus Terminal, but before his release from state custody, the Federal Bureau of Investigation ("FBI") "received notification that the Port Authority had arrested an individual[, Mr. Segui,] who stated he was attempting to travel to Michigan to kill his former professor[, John Doe]." (Gov't Opp. to Mot. to Suppress at 3.)  The Port Authority informed the FBI that Mr. Segui had sent an allegedly threatening email to that professor on October 30, 2018.  (*Id.*)  Upon Mr. Segui's release from state custody that same day, Special Agent Kerry Calnan ("Agent Calnan") of the FBI arrested Mr. Segui.  (Compl. ¶ 12.)  "[Mr. Segui] did not agree to waive his *Miranda* rights and speak to the FBI agents." (Gov't Opp. to Mot. to Suppress at 3.)

On February 25, 2019, Agent Calnan swore out an arrest complaint against Mr. Segui before Magistrate Judge Steven L. Tiscione of the United States District Court for the Eastern District of New York.  (*See generally* Compl.)  On March 12, 2019, Special Agent George Lane of the FBI submitted an affidavit in support of an application for a search warrant for Mr. Segui's computer, and a search warrant was issued the same day by Magistrate Judge Ramon E. Reyes.  (*See generally* ECF No. 30-1, Affidavit in Support of an Application Under Rule 41 for Warrants to Search and Seize.)  A subsequent search of Mr.

Segui's computer revealed much of the evidence at issue in these motions *in limine*.

On April 23, 2019, a grand jury in the Eastern District of New York indicted Mr. Segui for transmission of a threat to injure in violation of 18 U.S.C. § 875(c). (*See generally* Ind.) The indictment alleges that:

> On or about October 30, 2018, within the Eastern District of New York and elsewhere, the defendant FRANK SEGUI did knowingly and intentionally transmit in interstate commerce a communication containing a threat to injure the person of another, to wit: a communication threatening the life of, and threatening bodily injury to, John Doe, an individual whose identity is known to the Grand Jury.

(*Id.*) Jury selection and trial on the indictment are scheduled for December 9, 2019. (ECF Docket Entry, Oct. 10, 2019.)

Before the Court are the parties' motions *in limine*. The Government moves to (1) admit evidence of Mr. Segui's conduct prior and subsequent to the October 30, 2018 email and (2) preclude Mr. Segui from making arguments regarding his "nonexistent First Amendment right to email threatening communications." (*See generally* Gov't Br.) Mr. Segui moves to preclude his statement in his October 30, 2018 email regarding John Doe's son. (*See generally* Def. Br.) The Court will address each motion in turn.

### Standard of Review

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions i*n*

*limine*." *Highland Capital Mgmt., LP. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). Motions *in limine* "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). The trial court should only exclude evidence when it is "clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001). The trial court may reserve judgment until trial, so that the motion is placed in the appropriate factual context, *Nat'l. Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996), and the ruling remains "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer," *Luce*, 469 U.S. at 41.

The Federal Rules of Evidence provide the framework for determining the admissibility of evidence. "As a general matter, all relevant evidence is admissible . . . unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). "To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) (quoting

*Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918,
927 (2d Cir. 1977)). "Rather, evidence is 'relevant' if it has
'any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or
less probable than it would be without the evidence.'" *Id.*
(quoting Fed. R. Evid. 401). Even "[n]onconclusive evidence
should . . . be admitted if it makes a proposition more probable
than not." *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir.
2003) (internal quotation marks omitted).

Although evidence may be relevant, it may nonetheless
be excluded pursuant to Federal Rule of Evidence 403 ("Rule
403") "if 'its probative value is substantially outweighed by a
danger of . . . unfair prejudice.'" *United States v. Rivera*,
No. 13-CR-149(KAM), 2015 WL 1875658, at *3 (E.D.N.Y. Apr. 22,
2015) (citing Fed. R. Evid. 403; *United States v. Bourne*, No.
08-CR-888(NGG), 2011 WL 4458846, at *12 (E.D.N.Y. Sept. 23,
2011) ("Evidence of uncharged acts may be admissible, subject to
limitations imposed by Rule[] 403 . . . .")). "The term 'unfair
prejudice,' as to a criminal defendant, speaks to the capacity
of some concededly relevant evidence to lure the factfinder into
declaring guilt on a ground different from proof specific to the
offense charged." *Old Chief v. United States*, 519 U.S. 172, 180
(1997). The Court considers the evidence in the context of the
crime charged, excluding evidence "more inflammatory than the

charged crime," *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999); *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (finding no unfair prejudice where "evidence of prior narcotics transactions 'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged.'" (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990))), or if "the chain of inferences necessary to connect evidence with the ultimate fact to be proved" is unduly long, *see United States v. Lyles*, 593 F.2d 182, 195-96 (2d Cir. 1979), *cert. denied*, 440 U.S. 972, (1979).

### Discussion

The parties ask the Court to admit or preclude evidence on the basis of its perceived relevance (or lack thereof) to the elements of 18 U.S.C. § 875(c). A brief review of these elements will place the parties' motions in the appropriate context.

### I.   Elements of 18 U.S.C. § 875(c)

Mr. Segui is charged with transmitting a threat to injure in violation of 18 U.S.C. § 875(c), which provides:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to . . . injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

*Id.* The United States Supreme Court has observed that "[t]his statute requires that a communication be transmitted and that the communication contain a threat," but it "does not specify that the defendant must have any mental state with respect to these elements," particularly with respect to "whether the defendant must intend that his communication contain a threat." *Elonis v. United States*, 135 S. Ct. 2001, 2008 (2015). This omission led to inconsistency amongst the courts as to how to determine whether a communication is a threat within the meaning of the statute.

The Supreme Court held in *United States v. Elonis*, 135 S. Ct. 2001, that it is no longer sufficient for the jury to conclude that the communication was objectively threatening. Rather, because a defendant must be "blameworthy in mind" to be criminally liable, and because the crux of this offense is the transmission of a threat (rather than an innocuous communication), the Supreme Court held that the jury must also consider whether the government has proven that a defendant has the requisite *mens rea* with respect to sending the threat. *Id.* at 2012. The *Elonis* Court did not specify the *mens rea* required by the statute, *United States v. Jordan*, 639 F. App'x 768 (2d Cir. 2016) (summary order), but it instructed that the requirement of proving a defendant's *mens rea* is met where "the defendant transmits a communication for [1] the purpose of

issuing a threat, or [2] with knowledge that the communication will be viewed as a threat." *Elonis*, 135 S. Ct. at 2012; *see also United States v. Choudhry*, 649 F. App'x 60, 62 (2d Cir. 2016).

Until the *Elonis* decision, the Second Circuit employed only an objective test in determining whether a threat had been issued under § 875(c). *United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999); *see also United States v. Sovie*, 122 F.3d 122, 125 (2d Cir. 1997) (requiring that a communication be a "true threat," assessed under an objective test, to convict under § 875(c)). Prior to *Elonis*, the jury was required only to determine "whether an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury." *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013 (citing *United States v. Davila*, 461 F.3d 298, 305 (2d Cir. 2006)); *see also United States v. Kirsch*, 903 F.3d 213, 233 n.21 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1272 (2019). Thus, there was no need for the jury to consider whether the defendant actually intended for the communication to be perceived as threatening. *See Francis*, 164 F.3d at 123 (noting that the Government only had to prove "that the defendant intentionally transmitted a communication in interstate commerce and that the circumstances were such that an

ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury.").

The *Elonis* decision clarified that there is both an objective, *see Francis*, 164 F.3d at 123 (requiring that a communication be perceived by a reasonable recipient as a "true threat," assessed under an objective test, to convict under § 875(c)), and subjective, *see Elonis*, 135 S. Ct. at 2012 (requiring that the defendant have the requisite *mens rea*, assessed under a subjective test, to convict under § 875(c)), component to the § 875(c) analysis. *See also, e.g.*, *United States v. White*, 810 F.3d 212, 220–21 (4th Cir. 2016) ("[A]fter *Elonis*, . . . a conviction pursuant to § 875(c) now entails 'what the [statute requires] (a subjectively intended threat) and [also] what constitutional avoidance principles demand (an objectively real threat)'" (citing *United States v. Jeffries*, 692 F.3d 473, 485 (6th Cir. 2012) (Sutton, J., *dubitante*))); *United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016) ("Section 875(c) contains both a subjective and objective component . . . .").

Thus, the Government must prove beyond a reasonable doubt that: (1) "the defendant intentionally transmitted a communication in interstate commerce," *Francis*, 164 F.3d at 123, (2) "the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would

interpret it as a true threat of injury" (i.e., the objective component), *id.*, and (3) "the defendant transmit[ted] [the] communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat" (i.e., the subjective component), *Elonis*, 135 S. Ct at 2012.[2]

## II.  The Government's Motions *in Limine*

With the foregoing elements in mind, the Court turns to the Government's motions to (1) admit evidence of Mr. Segui's acts prior and subsequent to the October 30, 2018 email and (2) preclude Mr. Segui from making arguments regarding his "nonexistent" First Amendment right to email threatening communications.

### A. Motion to Admit Mr. Segui's Prior and Subsequent Acts

The Government first asks the Court to admit: (1) Mr. Segui's communications to or about John Doe before Mr. Segui sent the October 30, 2018 email, (2) Mr. Segui's Google search

---

[2] Courts in the Second Circuit have articulated the elements of § 875(c) slightly differently, *see, e.g.*, *Francis*, 164 F.3d at 123; *United States v. Veliz*, No. 03-CR-1473(GEL), 2004 WL 964005, at *2 (S.D.N.Y. May 5, 2004); *United States v. Doe*, 2008 WL 4694615, at *3 (S.D.N.Y. Oct. 21, 2008); *United States v. Choudhry*, 941 F. Supp. 2d 347, 354 (E.D.N.Y. 2013), though none of the differences appear to be substantive, with the exception of the addition of the subjective intent requirement in post-*Elonis* decisions, *see, e.g.*, *Mundle*, 2016 WL 1071035, at *2 (requiring that the government prove "that [1] the Defendant threatened to 'injure the person of another'; [2] such threat was made in interstate commerce; and [3] the defendant transmitted the threat "with knowledge that the communication [would] be viewed as a threat"). The courts of appeals similarly employ distinct articulations, but only in form. *See, e.g.*, *White*, 810 F.3d at 220-21; *United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018); *United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019); *United States v. Stevens*, 881 F.3d 1249, 1253 (10th Cir. 2018).

history relating to John Doe and/or the threat, and (3)
statements stemming from, or evidence discovered by law
enforcement after, Mr. Segui's February 22, 2019 arrest, when he
allegedly was en route to carry out the alleged threat.  (Gov't
Br. at 4.)  Mr. Segui concedes the first category of documents,
pre-dating or near in time to his October 30, 2018 email, are
admissible.  (ECF No. 33, Defendant's Opposition to Government's
Motions *in Limine* ("Def. Opp."), at 2 ("[T]he government
plausibly explains why Mr. Segui's prior communications to [John
Doe] and draft communications near in time to the October 2018
Email would be relevant to proving the charged offense: Those
communications sent by Mr. Segui to [John Doe] demonstrate both
[the professor's] concern upon reading the October 2018 Email
and the defendant's mental state when sending the email."
(internal quotation marks omitted)).  The Court agrees and
grants the Government's motion *in limine* with respect to Mr.
Segui's communications and draft communications to John Doe
prior or near in time to the October 30, 2018 email.

Mr. Segui, however, objects to admitting his Google
search history and the events surrounding his arrest, which
occurred after October 30, 2018.  The Government argues that
this evidence constitutes direct evidence of Mr. Segui's intent
to communicate a "true threat" and is "inextricably intertwined"
with the evidence of the charged offense or, alternatively, is

admissible as "other acts" evidence under Federal Rule of Evidence 404(b) ("Rule 404(b)"). (*Id.* at 4-7.) Mr. Segui counters that the evidence is not relevant to any element of the offense and, in any event, should be precluded under Rule 403 as substantially more prejudicial than probative. (Def. Opp. at 1-4.) The Court addresses these arguments below.

1. *Proper Framework for Admissibility*

The threshold question in addressing this motion *in limine* is determining whether evidence of Mr. Segui's subsequent acts constitutes "direct" evidence of the crime charged or "other acts" evidence subject to Rule 404(b). *See United States v. Ivanova*, 19 F. Supp. 3d 511, 514 (S.D.N.Y. 2014). To some extent, this inquiry "exalts form over substance." *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004). In either case, the Court must determine whether the evidence is relevant and, if so, consider whether to exclude the evidence because its probative value is substantially outweighed by a danger of unfair prejudice. *Id.* (citing *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000)). Moreover, all evidence of "intrinsic act[s] offered as direct proof of the crime charged will, by definition, satisfy Rule 404(b)." *Id.* The only practical difference in admitting other acts as direct evidence is that "the Government escapes 404(b)'s notice requirement and the Court need not give a limiting instruction cautioning the

jury against making an improper inference of criminal propensity." *Id.* But as Rule 404(b) provides for a more structured framework for determining admissibility, the Court will consider both approaches.

Evidence of other acts is admissible as direct evidence, and is not subject to Rule 404(b), "when it ar[ises] out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *Gonzalez*, 110 F.3d at 942 (internal quotation marks omitted)). It need not "directly establish an element of the offense charged," and may be admitted "to provide background for the events alleged in the indictment," including to show "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) (citing *United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984)); *see also United States v. Mundle*, 700 F. App'x 70, 72 (2d Cir.), *cert. denied*, 139 S. Ct. 291 (2018).

The Court is mindful that courts in the Second Circuit typically "employ a narrow construction" in considering whether other acts constitute direct evidence. *United States v.*

*Johnson*, No. 16-cr-281 (PGG), 2019 WL 690338, at *3 (S.D.N.Y. Feb. 16, 2019) ("[U]ncharged conduct is not 'inextricably intertwined' with charged conduct simply because it 'provides context or is relevant' to charged conduct." (quoting *United States v. Martoma*, No. 12-cr-973(PGG), 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014))).  Consequently, "numerous courts in this circuit have found it necessary to conduct Rule 404(b) analysis of uncharged [conduct] that merely provided context or was somehow relevant to the charged conduct."  *United States v. Kassir*, No. 04-CR-356(JFK), 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009) (compiling sources).  Indeed, "'where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b).'"  *United States v. Herron*, No. 10-CR-0615 NGG, 2014 WL 1894313, at *4 (E.D.N.Y. May 12, 2014) (citing *United States v. Townsend*, No. 06-CR-34 (JFK), 2007 WL 1288597, at *1 (S.D.N.Y. May 1, 2007), *aff'd sub nom. United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009)).

The Government makes a very plausible argument that Mr. Segui's prior and subsequent acts are direct evidence of the charged offense because they are probative of Mr. Segui's intent in sending the October 30, 2018 email to John Doe.  Moreover, Mr. Segui's subsequent arrest and the surrounding circumstances appear to be inextricably intertwined with the story of the

crime charged insofar as they explain how Mr. Segui and the email at issue came to be before the Court.

Yet, the Court acknowledges that it may not be "manifestly clear" that evidence of Mr. Segui's acts and statements after his October 30, 2018 communication constitute *intrinsic* proof of the crime charged. In contrast to instances where other acts were admitted as direct evidence in threat prosecutions, Mr. Segui's subsequent acts were slightly more attenuated temporally from the October 30, 2018 email upon which the indictment is based. *See, e.g.*, *United States v. Mundle*, No. 15-cr-315(NSR), 2016 WL 1071035 (S.D.N.Y. Mar. 17, 2016) (finding events in the "days leading up to, and the day after," the threat to constitute direct evidence as they were highly relevant to the objective test as to whether an ordinary recipient would interpret the communication as a threat, and occurred close in time). Mr. Segui's objection that the Government can tell the story of the charged offense without including the subsequent acts is not completely meritless, *see, e.g.*, *United States v. Cacace*, No. 08-cv-240(BMC), 2013 WL 12121327, at *2 (E.D.N.Y. Oct. 9, 2013) ("[T]he uncharged crimes occurred after the . . . murder, making it difficult to see how such evidence is necessary to complete the story of the charged murder in-aid-of racketeering."), but courts should generally permit the parties to try their cases with relevant evidence

unless precluded by the Federal Rules of Evidence, *Old Chief*,
519 U.S. at 183 (instructing trial courts to determine the
admissibility of evidence "with an appreciation of the offering
party's need for evidentiary richness and narrative integrity in
presenting a case"); *Perez*, 387 F.3d at 209 ("As a general
matter, all relevant evidence is admissible . . . unless
specifically excluded."). Consequently, the Court will also
consider the admissibility of Mr. Segui's acts following the
October 30, 2018 communication under Rule 404(b) (and will
address relevance and prejudice concerns, equally applicable to
direct evidence, in the discussion below).

2. *Admissibility Under Rule 404(b)*

Under Rule 404(b), "[e]vidence of a crime, wrong, or
other act" is not admissible to show a defendant's character but
"may be admissible for another purpose, such as proving motive,
opportunity, intent, preparation, plan, knowledge, identity,
absence of mistake, or lack of accident." Fed. R. Evid. 404(b);
*see also United States v. Scott*, 677 F.3d 72, 78 (2d Cir. 2012)
("Rule 404(b) is not limited to evidence of crimes or wrongs.
By its very terms, Rule 404(b) addresses 'other crimes, wrongs,
or acts.'" (emphasis in original)). The Second Circuit follows
the "inclusionary" approach to 404(b), admitting other acts
evidence unless it is "introduced for the sole purpose of
showing the defendant's bad character, . . . [is] overly

prejudicial under Fed. R. Evid. 403[,] or not relevant under
Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69
(2d Cir. 1996).

"The district court has broad discretion to admit
evidence pursuant to Rule 404(b), and its ruling will not be
overturned on appeal absent [an] abuse of discretion." *United
States v. Midyett*, 603 F. Supp. 2d 450, 454 (E.D.N.Y. 2009)
(citing *Carboni*, 204 F.3d at 44). In ruling on the
admissibility of evidence under Rule 404(b), the Court must
consider whether: "(1) it was offered for a proper purpose; (2)
it was relevant to a disputed trial issue; (3) its probative
value is substantially outweighed by its possible prejudice; and
(4) the trial court administered an appropriate limiting
instruction." *United States v. Edwards*, 342 F.3d 168, 176 (2d
Cir. 2003) (citing *United States v. Pitre*, 960 F.2d 1112, 1119
(2d Cir. 1992)).

Applying the foregoing factors, the Court finds that
Mr. Segui's prior and subsequent acts are admissible under Rule
404(b), except to the extent that certain Google searches must
be excluded under Rule 403, as addressed below.[3]

---

[3] In the Rule 404(b) context, a court need not determine whether the defendant
committed the acts the prosecution seeks to admit, but simply that a "jury
[could have] reasonably conclude[d] that the [other] act occurred and that
the defendant was the actor." *Huddleston*, 485 U.S. at 689. Here, the
defendant does not challenge that he committed any of the acts relevant
herein, aside from the conduct relevant to his motion to suppress.

a. <u>Proper Purpose</u>

The Government must show that it seeks to offer the other acts into evidence for a proper purpose, not as improper propensity evidence.[4]  The Government's "purpose in introducing the [404(b)] evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *S.E.C. v. McGinnis*, No. 14-CV-6, 2015 WL 5643186, at *11 (D. Vt. Sept. 23, 2015) (citing *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996)).  This factor is met.

The Government proffers intent, motive, and absence of mistake as reasons to admit the challenged evidence (*see, e.g.*, Gov't Br. at 6, 7), which are among the enumerated permissible bases for offering other acts into proof under Rule 404(b). *Edwards*, 342 F.3d at 177.  In particular, "[b]ecause the Government must prove that the Defendant made a communication [either 'for the purpose of issuing a threat' or] 'with knowledge that the communication [would] be viewed as a threat,'

---

[4] Mr. Segui concedes that some of the subsequent acts are relevant – "evidence showing Mr. Segui's awareness of the threatening nature of the email communication would be admissible" and "[e]vidence that would establish his motive for threatening the professor might be admissible as well."  (Def. Opp. at 3 n.1.)  Thus, it appears that Mr. Segui does not object to the admission of, for example, the draft grievance list, which suggests a motive for threatening John Doe.  The Court need not address at this time the fact that the Government did not list the grievance list as evidence it seeks to admit in its motions *in limine* (Gov't Br. at 4), but included it on its exhibit list (*see* ECF No. 45, Government's Exhibit List).

evidence offered to prove intent is proper." *Mundle*, 2016 WL
1071035, at *3 (citing *Elonis*, 135 S. Ct. at 2012); *see also,
e.g.*, *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987)
("Where intent to commit the crime charged is clearly at issue,
evidence of prior similar acts may be introduced to prove that
intent. The government may introduce such evidence during its
case-in-chief, rather than waiting until the conclusion of the
defendant's case, as long as it is apparent that intent will be
in dispute. In the present case, the government was required to
prove that appellants possessed the account numbers with intent
to defraud. The element of intent was thus clearly at issue . .
. ."). The evidence is relevant to prove Mr. Segui's purpose
and motive in sending the communication on October 30, 2018.

### b. Relevance

The Government must also show that the evidence it
seeks to offer into proof is relevant. As explained above,
evidence is relevant if "it has any tendency to make a fact more
or less probable than it would be without the evidence . . . and
the fact is of consequence in determining the action." Fed. R.
Evid. 401. The district court has "broad discretion to assess
the relevancy of evidence and [the Second Circuit] will not
overturn that determination unless it is arbitrary or
irrational." *Perez*, 387 F.3d at 209 (citing *United States v.
Cruz*, 797 F.2d 90, 95 (2d Cir. 1986)); *see also Midyett*, 603 F.

Supp. 2d at 454 ("The district court has broad discretion to admit evidence pursuant to Rule 404(b), and its ruling will not be overturned on appeal absent abuse of discretion." (citing *Carboni*, 204 F.3d at 44)). This factor is also met.

Relevancy "'exists only as a relation between an item of evidence and a matter properly provable in the case.'" *United States v. Rutkoske*, 506 F.3d 170, 177 (2d Cir. 2007) (quoting *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990)). "[M]ost evidence of intent is circumstantial," *United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. 1998); *see also United States v. Heras*, 609 F.3d 101, 106 (2d Cir. 2010) ("The law has long recognized that criminal intent may be proved by circumstantial evidence alone."), so courts "look at the entire circumstances of [a] defendant's conduct as an indication of the requisite criminal intent," *United States v. Barrett*, 178 F.3d 643, 648 (2d Cir. 1999). "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). But "the Government must identify the . . . connection between the act at issue and an element of the crime charged." *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (quoting *Garcia*, 291 F.3d at 137)).

In this case, Mr. Segui's subsequent acts are relevant to his purpose in sending the communication and his intent to send a threat because those acts allow the jury to consider inferences about Mr. Segui's state of mind and whether he intended his communication to convey a threat, or knew the communication would be taken as such,[5] which are elements the jury must consider in deciding if Mr. Segui violated § 875(c). Evidence of the entire circumstances of Mr. Segui's conduct would assist the jury with ascertaining Mr. Segui's state of mind at the time he sent the October 30, 2018 email, an issue critical to the disputed element of intent. *See Huddleston*, 485 U.S. at 686.

With respect to Mr. Segui's Google search history, the Government has indicated that in the three-and-a-half months after the October 30, 2018 email, Mr. Segui conducted the following searches:

> (1) ways to travel to the city in Michigan where [John] Doe
> lived; (2) contact information for [John] Doe; (3) the cost
> of a knife and a switch blade; (4) articles about Rikers
> Island; (5) how to make and buy different types of poisons;
> (6) whether it is possible to kill someone with a butter

---

[5] To the extent the Government argues that the subsequent acts are relevant to the objective component of the analysis, the Court is skeptical. (*See, e.g.*, Gov't Br. at 5 ("The evidence shows that the October 2018 Email was a serious statement, rather than exaggeration or careless talk, and that a reasonable recipient would have considered the communication a threat under the surrounding circumstances.").) John Doe did not know of Mr. Segui's subsequent acts, and only circumstances known to the recipient are relevant to the objective inquiry. After all, "a person cannot be threatened by information which is unknown to him or her." *United States v. McCrudden*, No. CR-11-061(DRH), 2015 WL 1198544, at *5 (E.D.N.Y. Mar. 16, 2015), *aff'd*, 655 F. App'x 23 (2d Cir. 2016).

knife; (7) when it is legal to kill a person and
        justifiable homicide; and (8) articles about college
        students killing their professors.

(Gov't Br. at 4.)  That Mr. Segui searched for ways to injure

individuals makes it more likely that, in sending the email, he

intended or knew that his email would be perceived as

threatening.  A reasonable jury may infer the following:  Mr.

Segui actually intended to convey a threat based on the evidence

that he took steps to carry out the threat or had considered

doing so.  Evidence that one who conveys a threatening

communication and takes actions from which a jury could infer

that he actually intends to carry out a threat of injury, or

considered doing so, is relevant to whether the individual

intended to convey a real threat, rather than a hyperbolic or

comical statement.  Thus, evidence that after the October 30,

2018 email, Mr. Segui acted in a manner consistent with his

threat of harm to John Doe is relevant to the jury's analysis of

whether Mr. Segui intended for the October 30, 2018 email to

John Doe to be threatening.  Evidence that Mr. Segui ran the

searches over a sustained three-and-a-half month period and that

many of the searches mirror or relate directly to the very

specific threats conveyed to John Doe by Mr. Segui's October 30,

2018 email is relevant to whether Mr. Segui specifically

intended to convey a threat to harm John Doe.  This evidence,

therefore, meets the relatively low bar of relevance regarding

Mr. Segui's intent, motive, knowledge, and absence of mistake. *See, e.g.*, *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985) (stating that the "standard of relevance established by the Federal Rules of Evidence is not high").

Mr. Segui's arrest as he was admittedly en route to carry out his October 30, 2018 threat and the surrounding circumstances are relevant for the same reason. That Mr. Segui planned to travel to Michigan to carry out the threat in a similar manner to that outlined in his email is relevant to his intent to convey a threat. Moreover, Mr. Segui's statement to the officers that his October 30, 2018 email was a "slight underhand threat" is highly relevant. Although Mr. Segui's statements are subject to interpretation by the jury, the evidence is relevant to the jury's determination of intent, knowledge, and lack of mistake. Mr. Segui's own statements to law enforcement regarding the email and the surrounding circumstances provide more insight as to whether Mr. Segui may have actually intended for his email to John Doe to convey a serious threat.

Mr. Segui, nevertheless, proffers several reasons why his subsequent acts are not relevant to any element of the charged offense, including his intent.

*First*, Mr. Segui asserts that his subsequent acts could not be relevant to his intent in sending the email because

they occurred after the fact. But the Second Circuit has declined "to adopt a *per se* rule that subsequent . . . act evidence inherently lacks relevancy" because "[r]elevancy cannot be reduced to [a] mere chronology." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) ("Rather than adopt a rigid approach, we leave it to the district court to exercise its discretion in reaching determinations about relevancy based upon the *Huddleston* analysis."); *see also Rutkoske*, 506 F.3d at 177 ("The courts of appeals mostly agree that the admission of subsequent acts under Rule 404(b) is governed by the same four-part test as prior acts, though some courts have recognized that the temporal relationship between the acts may have some bearing on the evidence's probative value."). In fact, "[s]ubsequent acts are frequently probative as to intent." *United States v. Goffer*, 721 F.3d 113, 124 (2013) (citing *United States v. Germosen*, 139 F.3d 120, 127-28 (2d Cir. 1998)); *see also, e.g.*, *United States v. Valle*, 301 F.R.D. 53, 89 (S.D.N.Y. 2014) (collecting cases and stating it is "well established that proof of subsequent conduct may be admissible as shedding light on a defendant's state of mind at an earlier time, including on the issue of whether the defendant acted with criminal intent"); *United States v. Blount*, 229 F.2d 669 (2d Cir. 1956).

*Second*, Mr. Segui argues that none of his subsequent acts are relevant to whether he sent the October 30, 2018 email

for the purpose of issuing a threat because they were unknown to John Doe.  Mr. Segui correctly argues that under § 875(c), he can only be convicted of sending a true threat.  But Mr. Segui further argues that whether a communication is a true threat is assessed under an objective test and, therefore, the jury must find not only that Mr. Segui intended to send a threat, but that he intended to send an *objectively* threatening communication, which Mr. Segui asserts is cabined to those facts known to the recipient of the communication.  Thus, Mr. Segui argues that his "alleged actions in Googling information about the professor and buying an axe and a bus ticket months later could have no possible bearing on those issues unless Mr. Segui communicated or otherwise disclosed those actions to the professor."  (Def. Br. at 3.)

Mr. Segui's argument is unavailing and conflates the objective and subjective components of the threat analysis. Under the objective test, evidence is only relevant if it is known to the recipient.  *See, e.g.*, *United States v. McCrudden*, No. 11-CR-061(DRH), 2015 WL 1198544, at *5 (E.D.N.Y. Mar. 16, 2015), *aff'd*, 655 F. App'x 23 (2d Cir. 2016).  Under the subjective test, on the other hand, the focus is on the defendant's intent or state of mind.  These inquiries "involve separate and distinct elements" and "determining the defendant's subjective intent requires a jury to address considerations not

directly relevant to an objective reasonable-person standard."
*United States v. Twitty*, 641 F. App'x 801, 805 (10th Cir. 2016)
(citations omitted).

For instance, following remand in *Elonis*, the Third
Circuit took issue with the defendant's attempts to conflate the
objective and subjective components of the analysis:

> Instead of asking the jury whether the defendant's
> communication was objectively threatening, Elonis would ask
> only whether the defendant believed his communication was
> objectively threatening. But it is not for the defendant
> to determine whether a communication is objectively
> threatening — that is the jury's role. If a defendant
> transmits a communication for the purpose of issuing a
> threat or with knowledge that the recipient will view it as
> a threat, and a jury determines that communication is
> objectively threatening, then the defendant has violated
> Section 875(c) whether or not he agrees the communication
> was objectively threatening.

*Elonis*, 841 F.3d at 596–97. The Third Circuit found that
adopting the defendant's approach "would render the objective
component meaningless." *Id.* In a similar vein, adopting Mr.
Segui's reading would in effect, replace the subjective inquiry
with a pseudo-objective one of whether the defendant intended to
threaten the recipient using only facts known to the recipient.
This approach would unduly limit the scope of the subjective
inquiry. The subjective and objective inquiries are distinct,
and although subsequent acts by the sender of a threatening
communication unknown to the recipient are not relevant to the

objective inquiry, the subsequent acts are relevant to the subjective inquiry.

Third, Mr. Segui argues that the subsequent acts are not relevant here because they are only probative of his intent to carry out the threat, and not his intent in sending the email. Mr. Segui cites pre-*Elonis* caselaw holding that a defendant's intent to carry out a threat, or ability to do so, is not relevant under § 875(c). But Mr. Segui overlooks the fact that these pre-*Elonis* decisions did not require that the jury find that the defendant subjectively intended to convey a threat, making evidence unknown to the recipient less relevant because it had little, if any, bearing on the objective analysis. *See United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994) (finding possession of firearms by defendant the day after he made allegedly threatening phone calls in a § 875(c) prosecution irrelevant because it was a "general intent" crime); *United States v. Smith*, 433 F.2d 1266, 1267 (5th Cir. 1970) (finding defendant's inability to carry out alleged threat irrelevant in § 875(c) prosecution because § 875(c) was a "general intent" crime).[6]

---

[6] The Ninth Circuit – which imposed a subjective intent requirement prior to *Elonis* – distinguished the line of cases cited by Mr. Segui in considering whether to admit evidence of a defendant's intent or capacity to carry out a threat as relevant to intent in the context of a § 875(c) prosecution. *United States v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007) ("While we note that other circuits have reached a contrary result in somewhat similar factual situations, *see, e.g.,* [*Himelwright*, 42 F.3d 777]; *United States v. Philibert*, 947 F.2d 1467, 1470-71 (11th Cir. 1991), it is important to point

Similarly, Mr. Segui cites *Turner*, a pre-*Elonis* case addressing a distinct statute, 18 U.S.C. § 115(a)(1)(B), for the proposition that "[w]hether a threat is ultimately carried out is, at best, of marginal relevance to whether the threat was made in the first place; indeed, the speaker need not even have intended or been able to carry out the threat for § 115(a)(1)(B) to apply." *Turner*, 720 F.3d at 429. Although § 115(a)(1)(B) has a specific intent requirement, it is different from the *mens rea* read into § 875(c) by *Elonis*, and *Elonis* has not been held to apply to § 115(a)(1)(B). *United States v. Wright-Darrisaw*, 617 F. App'x 107, 108 (2d Cir. 2015) ("[The Second Circuit] has yet to address whether the objective test for a true threat has been supplemented with" a subjective test outside the § 875(c) context); *United States v. Fitzgerald*, No. 15-CR-55-01, 2015 WL 9582144, at *1 (D. Vt. Dec. 30, 2015) (finding *Elonis* inapplicable to § 115(a)(1)(B)). Under § 875(c), the defendant must intend for the communication to be threatening. Under § 115(a)(1)(B), on the other hand, a threat is still evaluated under an objective test. *See, e.g.*, *United States v. Wynn*, 827 F.3d 778, 785 (8th Cir. 2016), *reh'g denied* (Aug. 5, 2016), *cert. denied*, 137 S. Ct. 604 (2016) (concluding that there was

---

out that those circuits do not require the government to prove that the defendant acted with specific intent to threaten. Consequently, we do not find their reasoning on this issue persuasive.").

no instruction error under *Elonis* when a district court defined the 'threat' element of § 115(a)(1)(B) to include only an objective standard); *United States v. Cruz*, 713 F. App'x 82, 85-86 (3d Cir. 2017) (affirming district court's jury instructions as to § 115(a)(1)(B) which indicated that defendant must specifically intend to "impede, intimidate, or interfere," not to threaten). The specific intent under § 115(a)(1)(B) is "to impede, intimidate, or interfere" with the threatened official's duties, or "to retaliate" against the official on account of the performance of threatened official's duties, which very well may be subject to different proof. 18 U.S.C. § 115(a)(1)(B).

Though the Court does not intend to overstate the value of Mr. Segui's subsequent acts, it finds that in the context of this case and the elements that the Government must prove to convict under § 875(c), the subsequent acts are relevant to Mr. Segui's motive, intent, knowledge, and absence of mistake in sending the October 30, 2018 email. Whether the probative value of the evidence regarding Mr. Segui's words and acts is so minimal that exclusion is warranted under Rule 403 is another question.

### c. FRE 403 Balancing Test

With respect to the third inquiry under Rule 404(b), Mr. Segui argues that the subsequent acts should be excluded pursuant to Rule 403. Rule 403 provides that a court may

"exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "All evidence introduced against a defendant, if material to an issue in the case, tends to prove guilt, but is not necessarily prejudicial in any sense that matters to the rules of evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). "Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *Id.* As noted previously, the "standard of relevance established by the Federal Rules of Evidence is not high," *Southland Corp.*, 760 F.2d at 1375, and the Court has "broad discretion to balance probative value against possible prejudice," *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008) (citing *United States v. LaFlam*, 369 F.3d 153, 155 (2d Cir. 2004)).

Importantly, "[p]robative value is also informed by the availability of alternative means to present similar evidence." *United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006). "[T]he Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." *Old Chief*,

519 U.S. at 184. "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfair prejudicial risk." *Id.* at 182-83. Thus, in considering whether to admit potentially prejudicial evidence, a court should consider whether "there is sufficient other, 'less prejudicial evidence that makes the same point.'" *United States v. Barret*, No. 10-cr-809(KAM), 2011 WL 6704862, at *13 (E.D.N.Y. Dec. 21, 2011) (quoting *United States v. Gotti*, 399 F. Supp. 2d 417, 419 (S.D.N.Y. 2005)).

Because Mr. Segui's subsequent acts are particularly relevant to his intent in sending the October 30, 2018 email, the starting point in the Court's analysis is determining which evidence the Government may introduce, aside from the subsequent acts, that bears on Mr. Segui's mental state. The jury could infer from the relationship between the parties alone that Mr. Segui would have sent the email with an intent to communicate a threat. It is also possible for the jury to infer from the language used by Mr. Segui in the draft and final emails that he knew and intended that the recipient would perceive his email as threatening. But much of the foregoing evidence is more probative of the objective component of the analysis than to the

34

subjective intent of the defendant. Although the October 30, 2018 email could be found by the jury to be threatening, the jury could also find the email to be the product of emotional instability on the defendant's part. *See, e.g.*, *Twitty*, 641 F. App'x at 805 ("A reasonable jury [could] determine[], for example, that the crazed and demented tone of [the defendant's communication] . . . [could in part] create[] a reasonable doubt concerning his subjective intent that his communication be viewed as an actual threat."). The subsequent acts are highly probative and it is important to allow the Government to present other relevant evidence, such as Mr. Segui's subsequent acts, bearing on his mental state in sending the email. The Court is also mindful of the fact that some of the evidence provides essential context as to why Mr. Segui is before the Court.

In this case, the Court cannot conclude that all of Mr. Segui's subsequent acts should be excluded from evidence. Mr. Segui's Mirandized post-arrest statements about the threat and the circumstances prior to and after the threat are essential to explain the story of how the crime came before the jury, as are the circumstances of his arrest which are necessary context for that evidence. As noted above, without this evidence, the jury will not know how the Government identified and obtained evidence of the threat and the other evidence in this case, including Mr. Segui's prior and draft communications

with John Doe, to which Mr. Segui does not object.  Moreover,
Mr. Segui's post-arrest statements – in particular, his
characterization of his October 30, 2018 email as a "slight
underhand threat" – provide important evidence of Mr. Segui's
intent in sending the email.  Mr. Segui's statements to law
enforcement at the Port Authority that he was on his way to kill
John Doe are relevant to the jury's determination as to whether
Mr. Segui intended to convey a threat of harm to John Doe in his
October 30, 2018 email.  Moreover, the Court will give a
limiting instruction, at the defendant's request, to avoid
confusing the jury as to the charged offense.

Mr. Segui nevertheless argues that the "[e]vidence
that [he] planned to kill the professor, researched different
ways of doing it and then purchased an axe, is infinitely more
disturbing than the charged conduct of sending an email
threatening to injure or even kill him."  *But see Mundle*, 2016
WL 1071035, at *3 (rejecting defendant's argument in the context
of a § 875(c) prosecution that introducing evidence of
surrounding circumstances would "impermissibly put[] [him] on
trial for kidnapping his mother").  The evidence that Mr. Segui
researched various means of killing the professor is probative
of his intent to communicate a threat to John Doe.

The searches that bear close parallels to the threats
outlined in Mr. Segui's October 30, 2018 email are particularly

probative of Mr. Segui's intent in sending that email and, therefore, should not be excluded under Rule 403.  These include Mr. Segui's Google searches regarding means of travel to the city where John Doe resided, John Doe's contact information, the costs of a knife and a switchblade, and whether it is possible to kill a person with a butter knife.

The other searches should be excluded either because they bear fewer parallels to the threat made by Mr. Segui and are therefore less probative, such as Mr. Segui's search about making and buying poisons, or because they suggest a consciousness of guilt in a manner untethered to Mr. Segui's specific threats, such as articles about Rikers Island, the legality of murder, and justifiable homicide.[7]  Admission of these relatively less relevant searches regarding poison, prison, murder, and homicide risks unfair prejudice and confusing the jury.  Moreover, the Government may still elicit the fact that the relevant Google searches were run after October 30, 2018, without specifying that the other searches were omitted.

The physical axe, sheath, and axe packaging are not excluded under Rule 403.  This evidence is relevant to Mr.

---

[7] The Government cites an eighth search conducted by Mr. Segui in its description of the facts – for "articles about college students killing their professors" – but does not list this search among those it seeks to admit in this action.  (*See* Gov't Br. at 4.)

Segui's threatened injuries and his intent in the same manner as the foregoing evidence. Mr. Segui's statements in the October 30, 2018 email that the recipient(s) did not deserve life, that "the world would be better off without you," the statements about "tying you down and cutting off your fingers," the cruel description of John Doe's son and references to god putting John Doe "in [his] place," Mr. Segui's post-arrest statements that he was traveling to Michigan to kill his professor, and that he had purchased an axe on the internet for that purpose render the axe, sheath, and packaging highly probative to Mr. Segui's intent to convey a threat to injure John Doe. The Court finds that the probative value of the foregoing evidence outweighs any danger of unfair prejudice or jury confusion. Mr. Segui's intent is a critical element which the Government must prove beyond a reasonable doubt. *Cf. United States v. Ravich*, 421 F.2d 1196, (2d Cir. 1977) ("Notwithstanding the relevance of the guns and the ammunition, the trial judge would have been justified in excluding them if he decided that their probative value was outweighed by their tendency to confuse the issues or inflame the jury."). As the evidence proffered by the Government includes Mr. Segui's admission that he purchased the axe to kill John Doe, physical evidence of the axe is no more inflammatory than Mr. Segui's own words both in his email and after he was arrested and given *Miranda* warnings. The Court

finds that exclusion of the axe, sheath, and packaging is not warranted under Rule 403. Mr. Segui's bus ticket is also probative and not likely to inflame the jury, and may be admitted into evidence.

In sum, the Government's motion to admit evidence of Mr. Segui's prior and subsequent acts is granted, except for the specific Google searches identified above, which the Court finds should be excluded under Rule 403.

### d. Limiting Instruction

The Court is aware that cautionary instructions "may lessen" any prejudicial effect of admitted evidence on the defendant. *Figueroa*, 618 F.2d at 943; *see also United States v. Snype*, 441 F.3d 119, 129–30 (2d Cir. 2006) (noting that "the law recognizes a strong presumption that juries follow limiting instructions"); *United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (upholding Rule 403 determination where challenged evidence was "not especially worse or shocking than the transactions charged" and where the district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence"). A limiting instruction would be effective in this context and the Court is willing to provide the jury with an appropriate limiting instruction indicating that it should only consider Mr. Segui's prior and subsequent acts for the purpose of ascertaining Mr. Segui's

intent with regard to the charged offense.  The Court will
permit Mr. Segui to request that the Court provide the jury such
an instruction and to propose language to the Court.

     B. <u>Motion to Preclude Mr. Segui from Making Arguments</u>
       <u>Regarding His "Nonexistent First Amendment Right to</u>
       <u>Email Threatening Communications"</u>

The Government also moves to preclude Mr. Segui from
"presenting evidence, making arguments[,] or eliciting testimony
referencing [his] First Amendment right to have sent the October
2018 Email because no such right exists."  (Gov't Br. at 7.)  As
the Government correctly states, the Second Circuit has upheld
the constitutionality of § 875(c) because it only criminalizes
true threats.  *United States v. Xiang Li*, 381 F. App'x 38, 39
(2d Cir. 2010) (citing *Francis*, 164 F.3d at 122-23).  So long as
the Government establishes the elements of § 875(c), including
that the communication conveys a true threat, Mr. Segui cannot
rely on a First Amendment defense.  *See id.*  Mr. Segui agrees
that "the application of the First Amendment to Section 875(c)
is a legal question for the Court rather than the jury, [and
therefore] do[es] not intend to present any such evidence or
arguments to the jury."  (Def. Opp. at 1.)  Because Mr. Segui
does not object the Government's motion *in limine* that he be
precluded from arguing that the First Amendment protects his
right to have sent a threatening email, and because the Court
agrees with the Government that in light of the Second Circuit's

precedent, presenting evidence of the sort the Government seeks to preclude would only serve to confuse the jury and has no probative value, *see* Fed. R. Evid. 403, this motion is granted.

## III. Mr. Segui's Motion *in Limine*

Mr. Segui moves to preclude an except from his October 30, 2018 email in which he references John Doe's son and states as follows: "[John Doe], I'm so glad that son of yours is a mute deformed autistic little shit. That's probably god's way of putting you in place."[8] (Def. Br. at 2.) Mr. Segui challenges the relevance of the evidence and argues that it should be excluded pursuant to Rule 403.

### A. Relevance of Evidence

Mr. Segui argues that his comment about John Doe's son "has no relevance to any element of [transmission of a threat to injure]" because it does not, in and of itself, constitute "a threat of bodily injury to the professor or anyone else." (*Id.* (citing 18 U.S.C. § 875(c)).) This argument relies on an unduly restrictive definition of relevance and overlooks the probative value of Mr. Segui's statement in the context of his October 30, 2018 email upon which the charged crime rests.

As noted above, to secure a conviction under § 875(c), the Government must show that the communication conveyed by Mr.

---

[8] Mr. Segui "does not challenge the admissibility, as an evidentiary matter, of the rest of this email." (Def. Br. at 2 (footnote omitted).)

Segui contained a true threat, assessed under an objective test. *See Francis*, 164 F.3d at 123. The test is "whether an ordinary, reasonable recipient *who is familiar with the context of the [communication]* would interpret it as a threat of injury." *United States v. Rosario*, 159 F.3d 1349, 1998 WL 612048, at *1 (2d Cir. 1998) (table) (quoting *Malik*, 16 F.3d at 49 (interpreting 18 U.S.C. § 876, companion statute to § 875(c) that proscribes threats mailed via U.S. Postal Service)). "Context is crucial" in making this determination. *Heller v. Bedford Cent. Sch. Dist.*, 665 F. App'x 49, 52 (2d Cir. 2016) (citing *Turner*, 720 F.3d at 420); *see also McCrudden*, 2015 WL 1198544, at *5 (considering the "background and contextual information known by, and the utterances directed at the recipient of the threat").

Mr. Segui's statement regarding John Doe's son provides critical context in showing how a reasonable recipient in John Doe's position would interpret the communication. The bulk of Mr. Segui's email is arguably directed towards all recipients, including John Doe. The statement Mr. Segui seeks to exclude, on the other hand, targets John Doe directly because of the reference to John Doe's son and is relevant to whether a reasonable recipient who is familiar with the context of the communication would perceive the threat to be a true threat,

considering the background and contextual information known by, and the utterances directed at, the recipient of the threat.

That Mr. Segui referenced very personal details about John Doe's son using crude and cruel language also suggests that Mr. Segui was not only angry, but had also dehumanized both John Doe ("you're all monsters," "you don't deserve life") and John Doe's son.  Dehumanizing the victim and his disabled child is relevant to Mr. Segui's intent to threaten harm to John Doe and is also highly relevant to whether a reasonable recipient of a communication referencing personal details regarding the recipient's particularly vulnerable child would interpret the communication as a serious threat of injury.  *See, e.g.*, *Heller*, 665 F. App'x at 52 (finding it relevant that individual who sent alleged threat, *inter alia*, "seemed to be angry, depressed, and generally emotionally 'worked up'"); *Rosario*, 1998 WL 612048, at *1 (noting that objective test entails considering "whether an ordinary, reasonable recipient *who is familiar with the context of the [communication]* would interpret it as a threat of injury"); *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) ("The true threat test turns on whether a reasonable person would foresee that a statement would be interpreted as a threat by those to whom the maker communicates. . . .  Because Hanna did not communicate with the law enforcement officers, their reactions to the documents had little bearing on the

question at issue — *what a reasonable person in Hanna's position* would have foreseen with regard to the persons with whom he communicated." (emphasis added)).

The Second Circuit has also made clear that in the context of determining whether a communication contains a true threat, "proof of the effect of the alleged threat upon the addressee is highly relevant." *Davila*, 461 F.3d at 305; *see also Malik*, 16 F.3d at 49 (affirming conviction for threatening a judge, and holding that the judge's testimony regarding his interpretation of the defendant's statements was "highly relevant"); *United States v. Rumble*, 520 F. App'x 26, 28 (2d Cir. 2013) ("[T]he District Court did not abuse its discretion by admitting evidence about the effect of the alleged threats on the agent and his family. The effect of a statement on its subject may be "highly relevant" to the question of whether or not the statement is a threat . . . ."), in part because "the recipients' states of minds and their reactions" can "remove ambiguity by shedding light upon the contexts of the alleged threats," *Malik*, 16 F.3d at 50.

For John Doe, the reference to his son raised serious alarm bells: "After receiving the email, [John] Doe found the references to his child especially alarming. [John] Doe's son has certain medical conditions, and the fact that [Mr. Segui] explicitly referenced that private fact led in part to [John]

44

Doe believing that the October 2018 Email was a threat, rather than bluster." (ECF No. 32, Government's Opposition to Defendant's Motion *in Limine*, at 3; *see also* Gov't Br. at 2 ("[John] Doe found the October 2018 email concerning and threatening, *especially the statement about his son*." (emphasis added)).) Again, the manner in which Mr. Segui referred to John Doe and John Doe's son suggests that Mr. Segui had dehumanized them both, making it all the more reasonable for a recipient in John Doe's shoes to believe that Mr. Segui was willing to inflict bodily injury on him. This also explains John Doe's reaction in the wake of receiving the email; namely, reporting the email to the university police department. *See, e.g.*, *Davila*, 461 F.3d at 305 ("[A] reasonable recipient could have concluded that the mailing threatened injury. The actual effect on the recipients strongly supports this conclusion. After the letter was discovered, [Connecticut] State's Attorney's Office personnel evacuated the area, initiated a full-scale emergency response, and kept the area sealed off until the powder could be tested."); *Xiang Li*, 381 F. App'x at 39 ("[T]he verdict also was supported by . . . testimony regarding the security measures taken as a result of the threats." (citing *Malik*, 16 F.3d at 49)).

Furthermore, Mr. Segui's statement regarding John Doe's son is inextricably intertwined with the charged criminal

conduct. As noted above, this statement was a key motivating factor which prompted John Doe to report the communication to police officers. Mr. Segui characterizes the Government's argument that the reference to John Doe's son is "inextricably intertwined" with the story of the crime charged as "farfetched" because other content in the email – for instance, that the recipients of the email "don't deserve life" – provided sufficient cause to report this email to the jury. (ECF No. 37, Reply in Support of Defendant's Motion *in Limine* ("Def. Rep."), at 2.) "That the comment about his son may have contributed to the mix," he argues, "is irrelevant unless its inclusion would be necessary for the jury to understand why he would report the incident." (*Id.*) Mr. Segui's argument is unavailing. That there were other reasons in addition to the statement regarding John Doe's child for John Doe's report to the police does not preclude the Government from introducing one of those reasons, nor does it negate the relevance of the evidence to the objective inquiry of whether the communication contained a true threat.

B. Rule 403 Balancing

The Court next considers whether, based on all of the evidence available, the reference to John Doe's son, standing alone, would be more prejudicial than probative. Mr. Segui asserts that his statement regarding John Doe's son should be

excluded because it has only "minimal" probative value (an argument already rejected by the Court), in comparison to a "monumental" danger of unfair prejudice due to the offensive nature of Mr. Segui's comment.  (Def. Br. at 3 ("It is hard to think of something more offensive and taboo in our society than mocking a disabled child.").)  The Court agrees that mocking a disabled child is unacceptable, but Mr. Segui chose to include the reference to John Doe's child in the context of the communication at issue in this case, which led to the indictment charging Mr. Segui with violating § 875(c).

        In the context of the October 30, 2018 email as a whole, the Court cannot find that Mr. Segui's statement regarding John Doe's son is substantially more prejudicial than probative.  As an initial matter, the Court has already rejected Mr. Segui's argument that this statement is of little probative value.  To the contrary, this statement is clearly probative of the elements of the offense charged, and it is inextricably intertwined with the story of the offense.  Furthermore, this statement – while cruel and offensive – is not substantially more inflammatory than the crime charged, which includes Mr. Segui's threats of bodily injury made through statements that all of the recipients copied are monsters, who "don't deserve life," or that "anything short of tying you down and cutting off your fingers[,] there is no way you will ever admit to any wrong

doing." *See, e.g.*, *Livoti*, 196 F.3d at 326 (finding unfair prejudice where challenged evidence was "more inflammatory than the charged crime"); *Pitre*, 960 F.2d at 1120 (finding no unfair prejudice where "evidence of prior narcotics transactions 'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'").

Mr. Segui relies on the Second Circuit's decision in *United States v. Morgan*, 786 F.3d 227, 233 (2d Cir. 2015), in which the defendant was charged with gun and drug charges. The Second Circuit concluded that the district court abused its discretion in admitting evidence that the defendant made death threats to a witness as evidence of consciousness of guilt of the charged gun and drug offenses. *Id.* at 232. This case is distinguishable. As an initial matter, Mr. Segui argues in his own submission that his statement regarding John Doe's child is not a death threat or a threat to the child's safety (Def. Rep. at 2), but instead simply a crude remark, unlike the death threats at issue in *Morgan*. The context of the threat and its relation to the charged offense is also entirely different in this case than it was in *Morgan*. *Morgan* addressed a situation where the defendant's death threats were admitted based on the premise that they could show the defendant's consciousness of guilt of the charged gun and drugs offenses, which premise was rejected by the Second Circuit. *Morgan*, 786 F.3d at 232. In

the Second Circuit's view, the threats in *Morgan* "bore no relation to the [gun and drug] offenses for which [the defendant] was being tried." *Id.* Here, by contrast, Mr. Segui's statement regarding John Doe's son is highly relevant to, and inextricably part and parcel of, his communication of an alleged threat to John Doe.

Overall, in the context of the circumstances of the October 30, 2018 communication and the crime charged, the reference to John Doe's son does not pose a substantial risk of unfair prejudice so as to warrant exclusion under Rule 403.

## Conclusion

For the reasons set forth above, the Government's motion *in limine* to admit evidence of Mr. Segui's prior and subsequent acts is GRANTED IN PART but DENIED IN PART as to the specific Google searches addressed above; the Government's motion *in limine* to preclude Mr. Segui from arguing that he has a First Amendment right to make threatening communications is GRANTED; and Mr. Segui's motion to preclude the Government from including his statement regarding John Doe's son in the October 30, 2018 email is DENIED.

**SO ORDERED.**

Dated:    Brooklyn, New York
          December 2, 2019

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge